UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDMUND MICHALOWSKI | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| DAN RUTHERFORD, individually, and | ) |
| KYLE HAM, individually | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AT LAW**

Plaintiff, EDMUND MICHALOWSKI (hereinafter "Michalowski"), by and through his attorneys, SVENSON LAW OFFICES, brings this Complaint against Defendants, DAN RUTHERFORD and KYLE HAM, in their individual capacities, and in support thereof, states as follows:

**NATURE OF ACTION**

1. Plaintiff Edmund Michalowski ("Michalowski") seeks redress for discrimination based upon his political affiliation in violation of his rights of free speech under the First and Fourteenth Amendments under the U.S. Constitution, as secured under the Civil Rights Act of 1866, 42 U.S.C. § 1983 and 1988, 28 U.S.C. § 2201 *et seq*., against Defendants Dan Rutherford and Kyle Ham; and for gender discrimination and for creating a hostile work environment in violation of his rights of equal protection under the Fourteenth Amendment to the U.S. Constitution as secured under the Civil Rights Act of 1866, 42 U.S.C § 1983 and 1988, 28 U.S.C. § 2201 *et seq*. against Defendants Dan Rutherford and Kyle Ham.

2. Plaintiff seeks declaratory and injunctive relief as well as damages for his injuries.

3. Defendants' actions as alleged herein constitute a continuing violation.

## JURISDICTION AND VENUE

4. Venue is proper in this judicial district as the unlawful acts described herein were committed in the State of Illinois, at the Office of the Illinois State Treasurer ("Treasurer's Office") in Chicago in this district. Accordingly, venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 (b).

5. This court has jurisdiction of this action under 42 U.S.C. § 1983.

## PARTIES

6. Plaintiff, Edmund Michalowski, is a male resident of Chicago, Illinois. He was employed by Defendants as a Deputy Director of Community Affairs and Director of Community Affairs and Marketing from January 2011 to February 2014.

7. Defendant Dan Rutherford (hereinafter "Rutherford") is the elected State Treasurer and had supervisory authority over Plaintiff. At all relevant times, he had the authority to hire, fire, demote, and discipline employees (including Plaintiff) and direct their work. Defendant Rutherford is sued in his individual capacity.

8. Defendant Kyle Ham (hereinafter "Ham") is the Chief of Staff for the Treasurer's Office and had supervisory authority over Plaintiff. At all relevant times, he had the authority to hire, fire, demote, and discipline employees (including Plaintiff) and direct their work. Defendant Ham is sued in his individual capacity.

9. At all relevant times, Defendants Rutherford and Ham acted under color of state law at all material times hereto.

## FACTS UPON WHICH PLAINTIFF'S CLAIMS ARE BASED

10. Plaintiff began working for Defendants at the Treasurer's Office in January 2011 as the Deputy Director of Community Affairs.

11. Plaintiff's job duties as Deputy Director of Community Affairs and then Director of Community Affairs included the conceptualization, design and management of statewide marketing policies and programs; and the building of partnerships with diverse groups including chambers of commerce, labor unions, and veteran, ethnic, religious and civic organizations.

12. Plaintiff satisfactorily performed his job duties at all times during his employment.

13. In March 2011 and at all relevant times thereafter, Plaintiff's immediate supervisor was Defendant Ham.

14. Ham reported and still reports directly to Rutherford.

15. In March 2011, Plaintiff was given a promotion in title: Director of Community Affairs with no accompanying salary increase.

16. At the time of the March 2011 promotion in title, Ham informed Plaintiff that he would be receiving a raise "soon," and was continually promised a raise on many occasions thereafter.

### Political Discrimination

17. At all relevant times, Rutherford actively operated a campaign committee registered with the Illinois State Board of Elections entitled "Dan Rutherford Campaign Committee" (the "Rutherford Committee").

18. In the summer of 2011, Rutherford was named the State Chairman for the Mitt Romney for President campaign (hereinafter the "Romney campaign").

3

19. On a continuing and ongoing basis since the beginning of Plaintiff's employment, Defendants subjected Plaintiff to a long-standing pattern of forcing Plaintiff to engage in outside political activity for the benefit of the Rutherford Committee and the Romney campaign during his working hours as the Director of Community Affairs for the State of Illinois, including but not limited to the following:

   (a) demanding that Plaintiff organize volunteers, parades and petition drives from Summer 2011 through November 2012 (Romney campaign);

   (b) demanding Plaintiff to constantly go through his extensive contacts and solicit donations from Plaintiff's own set of well-heeled contacts for the benefit of the Rutherford Committee;

   (c) demanding that Plaintiff arrange meetings between Rutherford and Plaintiff's own wealthy contacts for the benefit of the Rutherford Committee;

   (d) demanding that Plaintiff contact Republican officials throughout Illinois to promote the I-Cash program for the benefit of the Rutherford Committee;

   (e) demanding that Plaintiff check and respond to Plaintiff's political email account constantly for the benefit of the Rutherford Committee;

   (f) consistently berating Plaintiff for not meeting "fundraising money goals" set by Defendant Rutherford for the benefit of the Rutherford Committee;

   (g) shunning and ostracizing Plaintiff for not "playing ball" with assisting the Rutherford Committee.

20. At all relevant times, the "political activity" herein described was not part of Plaintiff's governmental job duties, but Plaintiff was forced to participate.

21. At all relevant times, Defendants' demands for the performance of "political activity" were made directly by Rutherford to Plaintiff on over a hundred of occasions via text communication, email communication, telephonic communication, and in-person.

22. At all relevant times, Rutherford's demands for the performance of "political activity" were also made indirectly by Rutherford through other employees to Plaintiff on numerous occasions via text communication, email communication, telephonic communication, and in-person.

23. At all relevant times, Ham's demands for the performance of "political activity" were made directly by Ham to Plaintiff on numerous occasions via text communication, email communication, telephonic communication, and in-person.

24. In December 2011, the Marketing Department of the Treasurer's office was consolidated with the Department of Community Affairs.

25. In December 2011, Plaintiff's staff and managerial duties increased with the addition of the Community Affairs Department to the Marketing Department.

26. In December 2011 and on other occasions thereafter, Plaintiff was once again informed by Ham that he would receive an increase in compensation to account for the increased job duties.

27. Throughout 2012, Plaintiff was informed by Ham that he would receive an increase in compensation and a promotion to either Deputy Chief of Staff or General Counsel.

28. On July 20, 2012, Defendant Rutherford sent the following text to Plaintiff: "What is the status of any the people you contacting for our effort? What we need to do (sic) move them forward?"

29. On July 30, 2012, Defendant Rutherford texted the following to Plaintiff: "Ready go through $ projections?"

30. On November 4, 2012, Defendant Rutherford texted the following to Plaintiff: "Ed I am asking Suzy Newberg to help nail down some of these fundraising attempts you are gel"

31. Throughout 2012 and 2013, Rutherford continually berated Plaintiff in front of Plaintiff's subordinates for purportedly not "getting the job done" - referring to not bringing in enough political fundraising money to the Rutherford Committee.

32. Throughout 2012 and 2013, Plaintiff never received a promotion and his salary stayed the same as the day he was hired.

33. Throughout 2012 and 2013, employees who were "active" in the Rutherford Committee received high raises and promotions.

34. In 2013, Rutherford screamed to another employee of the Treasurer's Office that Plaintiff was "useless to him" because he had not helped him sufficiently politically.

## Sexual Harassment and Gender Discrimination

35. On a continuing and ongoing basis from April 2011 through December 2013, Defendant Rutherford subjected Plaintiff to a long-standing pattern of discrimination based upon his sex (male), retaliation because he complained, and created and perpetuated an ongoing hostile work environment, including but not limited to the following:

(a) Inappropriately grabbing Plaintiff's genitals;

(b) Repeatedly "hitting on" Plaintiff;

(c) Making overt promises to Plaintiff regarding his job if Plaintiff "went along" with Rutherford's advances;

(d) Making offensive remarks generally in the Treasurer's Office both to Plaintiff and other male employees thereby perpetuating a hostile work environment;

(e) Subjecting Plaintiff to unwarranted scrutiny and criticism.

36. On April 2, 2011, Plaintiff drove Rutherford from Chicago to Rutherford's residence in Chenoa, Illinois, for an overnight retreat to discuss the Treasurer's advisory boards and whether there were potential donors suitable for those boards.

37. Plaintiff was informed by Rutherford that other staff members including Defendant Ham would be present at the meeting but no other staff arrived.

38. After dinner, Plaintiff retired to the guest bedroom at the Rutherford residence.

39. Rutherford entered Plaintiff's bedroom and grabbed at Plaintiff's genital area. Plaintiff immediately forced Rutherford off of him. Plaintiff gathered his belongings and left.

40. Plaintiff informed Ham of the incident shortly thereafter to which Ham replied "at least we have job security" and that "it" had happened to him as well.

41. A few weeks later, Plaintiff again followed up with Ham. Ham became upset and said "you're his friend, you talk to him."

42. On July 24, 2011, Treasurer's Office employee and Rutherford political Chief of Staff Curt Conrad texted Plaintiff the following: "The treasurer specifically asked that you wear a tank top. Totally your decision if you want to ignore. I am just a messenger."

43. In August 2011, there was "Republican Day at the State Fair" in Springfield, Illinois.

44. The evening before the "Republican Day," Rutherford and his staff, including Plaintiff, were at the Brown's bar in Springfield where many other Republicans had gathered.

45. At the Brown's bar, Plaintiff was speaking to a group of women.

46. Rutherford circled and stalked Plaintiff as he was talking to the women and complained that Plaintiff was "not talking to him."

47. As Plaintiff departed the bar with the group of women, Rutherford grabbed Plaintiff's arm, pulled Plaintiff aside, and said "if you go home with me, you can have anything you want in the office."

48. Plaintiff pulled away and left with the group.

49. Plaintiff reported the incident to Ham, who repeated "at least we have job security."

50. Ham further suggested that if Rutherford became governor that he (Ham) could be a rich lobbyist and so could Plaintiff.

51. Ham became distant to Plaintiff after the reporting of the August 2011 incident and was generally unresponsive to Plaintiff.

52. In August 2012, Plaintiff attended the Republican National Convention with Rutherford and others in Tampa Florida.

53. On August 20, 2012, there was a reception at the St. Petersburg hotel where the Illinois delegation for Romney was staying.

54. After the reception, Rutherford grabbed Plaintiff's arm and asked Plaintiff to go up to his hotel room. Plaintiff refused. Rutherford became angry, stating "you just said no to the Treasurer."

55. Upon returning to Chicago, Plaintiff reported the incident to Ham. Ham told Plaintiff that he was "not a team player." Ham also informed him that "Josh Lanning has the worst job and you should feel lucky."

56. On December 4, 2013, at a holiday party, Defendant Rutherford went over to Plaintiff, rubbed his shoulders, and said to Plaintiff "you need a full body massage," smiled, and walked away. Another individual present commented to Plaintiff "that was creepy."

57. Later the same week in December 2013, Plaintiff and another employee were called into Defendant Rutherford's actual office within the Treasurer's Office. Rutherford told the other employee "I can see your chest through that shirt and t-shirt. Shake it baby, shake it."

58. Defendants have subjected Plaintiff to political discrimination and retaliation on a continuing and ongoing basis in violation of the First Amendment.

59. Defendants have subjected Plaintiff to a hostile work environment and gender discrimination on a continuing and ongoing basis in violation of the Fourteenth Amendment.

60. As a result of Defendants' actions, Plaintiff has suffered damages.

61. The stress and anxiety suffered by Plaintiff from Defendants' conduct has manifested itself physically.

62. In November 2012, Plaintiff was admitted to the hospital with severe headaches. After numerous hospitalizations and tests, Plaintiff was diagnosed with leakage of cerebral spinal fluid in the brain for which he has undergone four blood patches and one occipital nerve block as a result of Defendants' conduct.

63. Plaintiff has missed time from work for these hospitalizations throughout 2013 as a result of Defendants' conduct.

64. Plaintiff has incurred over $100,000.00 in medical bills related to these hospital stays as a result of Defendants' conduct.

65. On January 31, 2014, Defendant Rutherford called a press conference in Chicago, Illinois, purportedly referring to the matter at hand.

66. During that press conference, Rutherford indicated that there was "no truth to [Plaintiff's] allegations…and no factual support."

67. While Defendant Rutherford did not name Plaintiff at the press conference, Plaintiff's identity was known within minutes to the Chicago press corps.

68. Defendant Rutherford's intermediaries leaked his name to the press in order to harass, retaliate and intimidate Plaintiff from coming forward.

69. Plaintiff was forced to resign from his employ at the Treasurer's Office as a result of Defendants' conduct.

## COUNT I - Discrimination and Harassment in Violation of the First Amendment Clause, 42 U.S. C. § 1983

70. Plaintiff restates and re-alleges paragraphs 1 through 69 above as though fully set forth herein against Defendants Rutherford and Ham.

71. At all times relevant thereto, Defendants acted as employees, supervisors, and policymakers for the Office of the State Treasurer and under color of law.

72. The First Amendment protects a wide spectrum of free speech and association including a public employee's right to free association, to support or not support a candidate of his own choosing, and to speak out and oppose political discrimination.

73. By not supporting Defendants' political activity to Defendants' apparent satisfaction, Plaintiff was engaged in the exercise of his First Amendment rights.

74. Defendants unlawfully retaliated against Plaintiff for the exercise of his rights under the First Amendment including but not limited to the following:

    (a) failing to promote Plaintiff,

    (b) failing to increase Plaintiff's compensation;

    (c) berating Plaintiff in front of his subordinates,

(d) berating Plaintiff to his colleagues that he was "worthless;" and

(e) failing to investigate Plaintiff's complaints about the harassment and treating him differently than other employees.

75. The actions of Defendants violated his rights guaranteed under the First Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

76. The individual Defendant has acted under color of state law at all material times hereto.

77. The actions of Defendant were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured by 42 U.S.C. § 1983.

78. The actions of Defendants in intentionally engaging in and condoning discrimination and the hostile work environment against Plaintiff has caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests:

A. All wages and benefits Plaintiff would have received but for the discrimination, including pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. Defendants be required to pay prejudgment interest to Plaintiff on these damages;

D. A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

E. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure equal treatment of male and female employees.

F. A declaratory judgment that Defendants' actions violate the Fourteenth Amendment to the United States Constitution;

G. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

H. Punitive damages as allowed by law as against the individual Defendants;

I. An award of reasonable attorney's fees, costs, and litigation expenses; and

J. Such other relief as the Court may deem just or equitable.

## COUNT II – Gender Discrimination and Harassment in Violation of the Equal Protection Clause, 42 U.S.C. § 1983

79. Plaintiff restates and re-alleges by references paragraphs 1 through 78 above as though fully set forth herein against Defendants Rutherford and Ham.

80. Defendants should not discriminate against their employees because of their gender.

81. Defendants have an obligation to ensure that their employees are not discriminated against based upon their gender.

82. Defendants know that employment decisions cannot be made on the basis of an employee's gender.

83. Defendants know that they have an obligation to ensure that employees are not subjected to a hostile work environment based on gender or to demand sex from any employee, especially in exchange for any benefit of employment.

84. Defendants know that they have an obligation to ensure that employees are not subjected to a hostile work environment based on the fact that an employee has complained about unlawful conduct, discrimination, and/or a hostile work environment.

85. Defendants should have a policy against discrimination and harassment.

86. Defendants violated that policy by discriminating against Plaintiff based upon his gender and by subjecting Plaintiff to a hostile work environment.

87. Defendants intentionally subjected Plaintiff to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of Plaintiff's employment and by knowingly failing and refusing to protect Plaintiff from those hostile and abusive conditions.

88. Defendants subjected Plaintiff to discriminatory treatment based on his gender, including but not limited to, those incidents identified above, and further; being denied raises and promotions and treated differently in the terms and conditions of his employment.

89. Defendants' actions reflect a policy, custom or pattern of official conduct of engaging in and condoning discrimination of men based on their gender and a hostile work environment.

90. Defendants' actions were committed and/or condoned by those with final policy making authority.

91. The individual Defendants have acted under color of state law at all material times hereto.

92. The actions of Defendants against Plaintiff violated his equal protection right to be free from sexual harassment and discrimination under the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

93. The actions of Defendants were intentional, willful and malicious and/or in deliberate indifference for Plaintiff's rights as secured by 42 U.S.C. § 1983.

94. The actions of Defendants in intentionally engaging in and condoning discrimination and the hostile work environment against Plaintiff has caused Plaintiff great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, and other consequential damages.

WHEREFORE, Plaintiff respectfully requests:

A. All wages and benefits Plaintiff would have received but for the discrimination, including pre-judgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. Defendants be required to pay prejudgment interest to Plaintiff on these damages;

D. A permanent injunction enjoining the Defendants from engaging in the discriminatory practices complained of herein;

E. A permanent injunction requiring that Defendants adopt employment practices and policies in accord and conformity with the requirements of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and further requiring that Defendants adopt and initiate effective remedial actions to ensure equal treatment of male and female employees.

F. A declaratory judgment that Defendants' actions violate the Fourteenth Amendment to the United States Constitution;

G. The Court retain jurisdiction of this case until such time as it is assured that Defendants have remedied the policies and practices complained of herein and are determined to be in full compliance with the law;

H. Punitive damages as allowed by law as against the individual Defendants;

I. An award of reasonable attorney's fees, costs, and litigation expenses; and

J. Such other relief as the Court may deem just or equitable.

Dated: February 10, 2014

Respectfully submitted,

EDMUND MICHALOWSKI

By: /s A. Christine Svenson_____
Attorney for Plaintiff

**JURY DEMAND - Plaintiff demands a trial by jury.**

Alice Christine Svenson, #6230370
Svenson Law Offices
505 N. LaSalle Street
Suite 350
Chicago IL 60654
Tel: 312.467.2900
Fax: 312.467.2902
Email: christine@svensonlawoffices.com