# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EDMUND MICHALOWSKI, **Plaintiff,** v. DAN RUTHERFORD, STATE OF ILLINOIS, ILLINOIS STATE TREASURER'S OFFICE, CURT CONRAD, KYLE HAM, DAN RUTHERFORD CAMPAIGN COMMITTEE, and ROMNEY FOR PRESIDENT, INC. **Defendants.** | Case No. 14-cv-00899 Judge Joan H. Lefkow |

**REPLY IN SUPPORT OF
DEFENDANT ROMNEY FOR PRESIDENT, INC.'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Brian J. Murray
Kenton J. Skarin
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692
Phone: (312) 782-3939
Fax: (312) 782-8585
Email: bmurray@jonesday.com
      kskarin@jonesday.com

I. **PLAINTIFF HAS ABANDONED HIS RICO CONSPIRACY CLAIMS AND CONCEDES THAT ROMNEY FOR PRESIDENT NEVER VIOLATED RICO**

Plaintiff's Combined Response to Defendants' Motions to Dismiss (Response) is notable for what it concedes.[1] As an initial matter, Plaintiff has entirely abandoned his RICO conspiracy claims. Indeed, there is not a single citation to the RICO conspiracy statute, 18 U.S.C. § 1962(d), nor does the word "conspiracy" appear. As a result, Plaintiff's RICO conspiracy claims should be dismissed with prejudice as to all defendants due to the numerous shortcomings explained in the Motion to Dismiss of defendant Romney for President, Inc. (Romney for President or the Campaign), which Plaintiff does not address. *See* Dkt. 39-1 at 13-15.[2]

Similarly, Plaintiff concedes that Romney for President committed *absolutely no RICO predicate acts*. *See, e.g.*, Dkt. 56 at 23 ("liability of the Campaigns is not premised on any direct actions of their own"). By virtue of this concession, he also necessarily admits that he does not allege any pattern of RICO activity against the Campaign. Finally, Plaintiff nowhere disputes that the Campaign did not exercise any control over the alleged RICO enterprise. *See* Dkt. 39-1 at 11-13. In sum, Plaintiff admits, as he must, that there is no basis for the assertion in his First Amended Complaint (Complaint) that Romney for President itself violated § 1962(c) in any way or is liable under § 1964(c), *see* Dkt. 26 ¶¶104-108, and his claim should be dismissed.

---

[1] Throughout this Reply, Romney for President also adopts and incorporates each of the arguments advanced by Defendants Dan Rutherford, Kyle Ham, and Curt Conrad (Individual Defendants) and Defendant Dan Rutherford Campaign Committee (Rutherford Campaign) in their reply memoranda in support of their motions to dismiss, as well as the Individual Defendants' reply in support of their motion for sanctions.

[2] Plaintiff also explicitly abandoned his claims for injunctive relief. *See* Dkt. 56 at 12 n.1.

II. **PLAINTIFF'S ATTEMPT TO AMEND HIS COMPLAINT THROUGH HIS PLEADINGS ALSO FAILS**

Having failed to establish his claims as to Romney for President, Plaintiff invokes Fed. R. Civ. P. 8 in an attempt to save his inadequately-worded allegations against the Campaign. Dkt. 56 at 23-26. He asserts that what he *really* meant to say in his Complaint was that Romney for President was liable under *respondeat superior* for the actions of defendant Rutherford. *Id.* Regardless of how Plaintiff attempts to characterize his claim, it amounts to the assertion that if he can demonstrate a RICO violation by Rutherford, any entity with which Rutherford was affiliated is *also* liable for a RICO violation. This theory also fails.

First, even if Plaintiff's newly-minted *respondeat superior* theory were viable, his Complaint never mentions it. Under long-standing precedent, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *see also, e.g.*, *Builders Bank v. Ruvalcaba*, No. 14 C 1116, 2014 U.S. Dist. LEXIS 110136, at *5 (N.D. Ill. Aug. 8, 2014) (same, citing *Car Carriers*). Plaintiff's Complaint alleges only the same cookie-cutter recitation of the elements of RICO against all defendants, nowhere mentioning his newfound theory. *See* Dkt. 26 ¶¶104-108.

And even counterfactually assuming that the Complaint did mention *respondeat superior*, Plaintiff's own Response shows that he could not adequately plead the required elements. *See* Dkt. 56 at 24-25. Plaintiff recognizes that he would have to show that Rutherford's alleged acts were (1) related to and committed within the course of employment, (2) committed in furtherance of the employer, and (3) authorized or subsequently acquiesced in by the employer. *Id.* (citing *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1306 (7th Cir. 1987)). But all he claims in his Response (which again is not the same as pleading it in his Complaint) is that Rutherford was an agent and that "it may be inferred that the Campaigns either implicitly or explicitly

2

acquiesced." *Id.* at 25; *see also id.* at 26 ("Discovery will quickly bear out whether the Campaigns had sufficient involvement with or acquiesced in the individual defendants' actions"). That is precisely the type of inadequate "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [that] do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008); *see also Williams Electronics Games, Inc. v. Barry*, 42 F. Supp. 2d 785, 793 (N.D. Ill. 1999) (dismissing RICO claim that failed to allege acquiescence).

Similarly, Plaintiff makes no response to Romney for President's observation that Plaintiff has failed to allege that Rutherford had *any* kind of actual, formal power to direct the Campaign's activities such that the Campaign is liable for his (alleged) behavior. Dkt. 39-1 at 2, 3, 13. Indeed, he admits elsewhere in his Response that Romney for President and the Rutherford Campaign "are external political organizations that necessarily have nothing to do with the operation or political direction of the ISTO." Dkt. 56 at 28. As a result, Plaintiff also has not even attempted to argue that any acts alleged to be taken by Rutherford with regard to the State Treasurer's Office were within the course of his "employment" with the Campaign. Plaintiff instead relies on a talismanic invocation of the word "agent," devoid of any explanation or detail and devoid of any allegations to illustrate compliance even with the legal test he invokes. Far from being saved by his citation of Rule 8, Plaintiff's memorandum illustrates just how inadequately-pled his accusations are.

### III. PLAINTIFF STILL FAILS TO STATE A RICO CLAIM

#### A. Plaintiff Fails to Allege Any Racketeering Activity

Plaintiff's allegations also fail as to all defendants because the state statutory predicates he alleges are not proper RICO predicates.[3] Plaintiff incorrectly accuses defendants of misconstruing precedent, *see* Dkt. 56 at 17, but Romney for President carefully explained that *United States v. Genova*, 333 F.3d 750, 758 (7th Cir. 2003), addressed 720 ILCS 5/33-3(c) rather than § 5/33-3(b). *See, e.g.*, Dkt. 39-1 at 7. Romney for President then explained that *Genova* defined bribery for RICO purposes and that just as § 5/33-3(c) does not constitute RICO bribery, so also the similar § 5/33-3(b) fails as a RICO predicate. That does not, however, make *Genova* "irrelevant," as Plaintiff would have it. Dkt. 56 at 18. Instead, Plaintiff's assertions highlight that he has no response to the closest available legal authority or to Romney for President's explanation of why *Genova's* conclusion that § 5/33-3(c) is not a RICO predicate bars Plaintiff's claim under a similar statutory subpart here. Reasoning by analogy—the very foundation upon which common law is built—cannot be discarded just because it requires analogizing in the first place. To prevail, Plaintiff had to explain why the differences between *Genova* and this case undermine *Genova's* persuasive force. He failed to do so.[4]

Nor can 720 ILCS 5/12-6 constitute a RICO predicate because the state law Plaintiff alleges was violated—intimidation with the "intent to cause another to perform or to omit the

---

[3] Plaintiff appears to concede that his Complaint failed to cite the proper definitional section, § 1961(1)(A). *Compare* Dkt. 56 at 14 (now citing § 1961(1)(A), *with* Dkt. 39-1 at 6 n.3 (noting error).

[4] Plaintiff's argument that he can look through § 5/33-(b) and transform the statute into a RICO predicate based on whatever underlying statute he chooses to invoke is similarly undermined by *Genova*. Section 5/33-3(c) contains an equally "pass-through" subsection barring performance of an act in excess of lawful authority, yet the *Genova* court held that the subsection was not a RICO predicate. And even if that were not the case, neither of the state laws Plaintiff cites satisfy § 1961(1)(A)'s requirement that all state law RICO predicates must be "punishable for more than one year." Plaintiff's first law, 5 ILCS 430/5-15, is a misdemeanor with less than one year, *see* 5 ILCS 430/50-5(a); 730 ILCS 5/5-4.5-55(a), and his second law, 5 ILCS 430/5-35, imposes only a fine of $1,001 to $5,000. *See* 5 ILCS 430/50-5(b).

4

performance of any act"—also does not constitute RICO extortion. Plaintiff agrees with Romney for President that § 5/12-6 must generically constitute extortion to be a RICO predicate act under § 1961(1)(A). *See* Dkt. 39-1 at 8-9 ("a state statute can only qualify as RICO extortion if it is 'capable of being generically classified as extortionate'") (quoting *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003)); Dkt. 56 at 14 (same). Plaintiff also agrees that "'the state extortion offense for purposes of RICO'" *requires* "'obtaining something of value.'" *Id.* at 15-16 (quoting *Scheidler*, 537 U.S. at 410); *see also Santana v. Cook County Board of Review*, 700 F. Supp. 2d 1023 (N.D. Ill. 2010) (recognizing that RICO extortion requires an attempt to obtain property). Finally, Plaintiff also agrees that § 5/12-6 is at least "slightly broader than the generic definition of extortion, given that it criminalizes both coercion and extortion." *Id.* at 16. Plaintiff nevertheless contends that this court can look beyond the statutory elements of § 5/12-6 to consider the facts Plaintiff has alleged and may use those facts to determine whether the admittedly overbroad Illinois intimidation statute constitutes generic RICO extortion.

      The Supreme Court has repeatedly rejected Plaintiff's approach in determining whether state law offenses constitute "generic" predicate offense in conducting an analogous inquiry under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). *See Descamps v. United States*, 133 S. Ct. 2276 (2013); *Nijhawan v. Holder*, 557 U.S. 29 (2009); *Shepard v. United States*, 544 U.S. 13 (2005); *Taylor v. United States*, 495 U.S. 575 (1990). In answering this question, the Court has repeatedly adopted what it terms "the 'categorical approach,'" meaning that a "prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps*, 133 S. Ct. at 2281. Not surprisingly due to the many different ways in which state legislatures draft criminal laws, the Court has also adopted a so-called "modified categorical approach" to deal with "statute[s] with

alternative elements," not all of which correspond to a predicate offense. *Id.* at 2284. In that situation—and that situation only—a court may look past the statutory offense for the sole purpose of "discover[ing] 'which statutory phrase,' contained within a statute listing 'several different' crimes, 'covered a prior conviction.'" *Id.* at 2285 (quoting *Nijhawan*, 557 U.S. at 41).

Critically for this case, however, *Descamps* clarified that the modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the general offense's." *Id.* As a result, the *Descamps* Court refused to look behind the statutory requirements of an admittedly overbroad California statute that "'define[d] burglary more broadly' than the generic offense." *Id.* (quoting *Taylor*, 495 U.S. at 599). It reasoned that "because California, to get a conviction, need not prove that Descamps broke and entered," one of the elements of generic burglary, a violation of the California statute "cannot serve as an ACCA predicate," regardless of whether as a factual matter breaking and entering occurred. *Id.* at 2285-86. In sum, when a court can discern from the face of the predicate statute that the crime "does not correspond to the relevant generic offense," there is no need to look to the underlying facts, and "the inquiry is over." *Id.* at 2286.

The logic of *Descamps* and its predecessors is equally applicable here.[5] Just as RICO penalizes violations of state law (including extortion) that fall within § 1961(1)(A), so also ACCA "increases the sentences of certain federal defendants who have three prior convictions

---

[5] A number of courts have recognized the applicability of the *Decamps* line of cases to similar non-ACCA federal statutes incorporating generic state law predicates. *See, e.g.*, *Bautista v. Atty. Gen.*, 744 F. 3d 54, 61-62 (3d Cir. 2014) (applying *Descamps* in interpreting the Immigration and Nationality Act provision regarding conviction for crimes involving moral turpitude); *United States v. Pascacio-Rodriguez*, 749 F.3d 353, 356-59 (5th Cir. 2014) (same; U.S.S.G. § 2L1.2); *United States v. Garcia-Santana*, 743 F.3d 666, 672 (9th Cir. 2014) (same; 8 U.S.C. § 1101(a)(43)(U)); *United States v. Davila-Felix*, 2014 U.S. App. LEXIS 16293, at *5 (1st Cir. Aug. 18, 2014) (same; 18 U.S.C. § 3559(c)(1)).

6

'for a violent felony,' including 'burglary, arson, *or extortion*.'" *Descamps*, 133 S. Ct. at 2281 (quoting 18 U.S.C. § 924(e)) (emphasis added). And just as in this case, courts assessing ACCA enhancements must determine whether particular state statutes are sufficiently similar to the generic categories of crimes that qualify as predicates under the federal statute.

There is no question that Plaintiff's argument that § 5/12-6 is equivalent to the generic federal crime of "extortion" would be completely barred in the ACCA context. The Illinois intimidation statute pled in Plaintiff's Complaint criminalizes various threats made "with intent to cause another to perform or to omit the performance of any act." § 5/12-6. In the words of *Descamps*, that predicate statute "does not correspond to the relevant generic offense" because the statute does not require a defendant to obtain property, as required for generic federal extortion. 133 S. Ct. at 2286. Indeed, the state need not show *any* connection to obtaining property to secure a conviction. *Cf. McKinney v. State*, 720 F. Supp. 706, 709 (N.D. Ill. 1989) (dismissing RICO claim invoking § 5/12-6 without mentioning property). The same reasoning should apply to bar the use of § 5/12-6 as equivalent to the generic federal offense of extortion for RICO purposes. *See SKS & Assocs. V. Village of Oak Lawn*, No. 10 C 1083, 2010 WL 3735733, at *1 (N.D. Ill. Sept. 16, 2010) ("The only predicate act alleged is that of the crime of intimidation, in violation of 720 ILCS 5/12-6(a)(6), which cannot sustain a RICO claim.").[6]

---

[6] The fact that this case is a civil case, while *Descamps* and similar cases involved criminal prosecutions, is not a basis for distinction under RICO. Section 1961(1)(A), the provision at issue in this case, is part of the criminal RICO statute. Civil RICO merely borrows the elements of criminal RICO pursuant to § 1964(c) while adding the additional requirement of injury to business or property, and the fact that a civil suit piggybacks on the criminal statute does not change § 1961(1)(A)'s interpretation. Similarly, the fact that ACCA cases are based in part on Sixth Amendment concerns about judicial factfinding does not render inapplicable their analysis of the proper method of determining whether a state criminal law is included in a generic federal equivalent. If anything, concerns about notice to criminal defendants apply with equal force to state law predicates that may be incorporated under RICO, particularly given the significant penalties to which incorporation can expose a RICO defendant.

Plaintiff's citations to two cases from the mid-1990s that addressed § 5/12-6 in the context of other federal statutes are not to the contrary. Dkt. 56 at 15. Both decisions predate most of the Supreme Court cases discussed above by at least a decade and are inapposite for that reason alone, but even if that were not the case they are distinguishable. *United States v. Unthank* determined that Illinois intimidation can constitute a prior *crime of violence* for purposes of federal sentencing enhancement under U.S.S.G. § 4B1.2(1). *See* 109 F. 3d 1205, 1209-10 (7th Cir. 1997). The court addressed not whether Illinois intimidation requires acquisition of property as an element but rather whether a threat of physical violence against property could establish federal extortion. *Id.* at 1206, 1209-10. The defendant in *Unthank* apparently never challenged the fact that federal extortion *also* requires obtaining something of value, and the court therefore had no reason to address and in fact did not address the critical issue in this case. *Unthank* has no bearing here.[7]

Nor does *United States v. McNeal* help Plaintiff. *McNeal* recognized that under Seventh Circuit precedent, the violation of the federal Travel Act at issue there "'does not incorporate state law as part of the federal offense' and thus 'violation of the Act does not require proof of a violation of state law.'" 77 F.3d 938, 942 (7th Cir. 1996) (quoting *United States v. Campione*, 942 F.2d 429, 434 (7th Cir. 1991)). *McNeal* is thus inapplicable to RICO, which unquestionably *does* require predicate state law violations under § 1961(1)(A). And while the *McNeal* court did note that the defendant there had in fact violated § 5/12-6, its discussion elided whether Illinois intimidation constitutes federal extortion, instead focusing on evidence demonstrating that the

---

[7] The analysis is not changed by the fact that the threats to property in *Unthank* were intended to secure collection of an overdue bill. The court's entire discussion centered on the defendant's threats, not on what the defendant sought to obtain by them. For the same reason, Plaintiff cannot argue that the provision invoked in *Unthank*, § 5/12-6(1), saves his claim. Section 5/12-6 penalizes threats "with intent to cause another to perform or to omit the performance of any act," and a threat against property under § 5/12-6(1) is a merely a method of causing a victim to act, not a method of obtaining property.

8

defendant committed Illinois intimidation. *See, e.g.*, *McNeal*, 942 F.2d at 944 ("[w]ithout doubt, this was an act of intimidation under Illinois law").

### B. Plaintiff Fails to State Any Pattern of Racketeering Activity

Plaintiff also fails to allege a "pattern of racketeering activity" against any defendant. § 1962(c). Plaintiff does not dispute that he fails this element insofar as his § 1961(1)(A) predicates fail. Nor does he dispute that he alleges no pattern against Romney for President. His attempts to show that he satisfies this element as to *other* defendants fail for the reasons stated in those defendants' opening briefs, *see* Dkt. 49 at 5-7; Dkt. 53 at 7-9, which the Campaign incorporates by reference. As to the open-ended continuity test, the 2012 election is long over, Plaintiff admits he has left the State Treasurer's Office, and Plaintiff's only ongoing assertions relate to *other* defendants without mentioning the Campaign. *See* Dkt. 56 at 22 ("head of and high-ranking staffers of ISTO" allegedly still seek "to further *Rutherford's* ambitions and aid his political allies") (emphasis added). And as to closed-end continuity, Plaintiff admits that he is the only individual named, Dkt. 56 at 23, while the "acts" he alleges about the Campaign boil down to entirely unspecified political work, unspecified contributions to an unspecified non-Campaign entity, and alleged petition work. Dkt. 27 ¶¶ 44, 47-48, 50-57. That is no pattern.

### C. Romney for President Did Not Conduct or Participate in Any RICO Enterprise's Affairs

Finally, Plaintiff never even addresses Romney for President's explanation that Plaintiff failed to establish the required control element of a RICO violation with regard to the Campaign. *See* Dkt. 39-1 at 11-13. Under that element, Plaintiff must show that Romney for President "conduct[ed] or participat[ed], directly or indirectly, in the conduct of" the alleged RICO enterprise Illinois State Treasurer's Office's affairs. § 1962(c). Romney for President explained in its opening brief that "tangential involvement in an enterprise" is not enough. *Crichton v.*

9

*Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009). Thus, even assuming for the moment that Plaintiff adequately alleges the other required RICO elements, an organization cannot be held liable if it did not "participat[e] in the operation or the management of the enterprise itself" and "asser[t] some control over the enterprise." *Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 598 (7th Cir. 2001); *see also James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 401-02 (7th Cir. 2006). Plaintiff does not and cannot allege that Romney for President controlled the Illinois State Treasurer's Office's affairs; he admits the precise opposite. Dkt. 56 at 28 (Romney for President is an "external political organizatio[n] that necessarily [has] nothing to do with the operation or political direction of the ISTO"). Instead, he attempts to construct a daisy-chain of RICO control by saying that Romney for President controlled the Illinois State Treasurer's Office because Rutherford controlled the Illinois State Treasurer's Office and was affiliated with Romney for President. Apparently by Plaintiff's logic, any time two organizations share a common figure, that fact alone is sufficient for RICO liability. That is not what RICO's control element requires and constitutes yet another reason for dismissal.

## CONCLUSION

For the foregoing reasons, the Court should dismiss with prejudice Plaintiff's claims against Romney for President, Inc.

| | |
|---|---|
| Dated: September 18, 2014 | Respectfully submitted,<br><br>ROMNEY FOR PRESIDENT, INC.<br><br>By: /s/ Kenton J. Skarin<br>One of Its Attorneys<br><br>Brian J. Murray<br>Kenton J. Skarin<br>JONES DAY<br>77 West Wacker Drive<br>Suite 3500<br>Chicago, IL 60601-1692<br>Telephone: (312) 782-3939<br>Facsimile: (312) 782-8585<br>Email: bmurray@jonesday.com<br>            kskarin@jonesday.com |

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 18th day of September, 2014.

                                              /s/ Kenton J. Skarin
                              One of the Attorneys for Romney for President, Inc.