## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

EDMUND MICHALOWSKI,                    )
                                       )
      Plaintiff,                 )
                                       )     Case No. 14 C 899
      v.                         )
                                       )     Judge Joan H. Lefkow
DAN RUTHERFORD, STATE OF ILLINOIS,     )
ILLINOIS STATE TREASURER'S OFFICE,     )
CURT CONRAD, KYLE HAM, DAN             )
RUTHERFORD CAMPAIGN COMMITTEE,         )
and ROMNEY FOR PRESIDENT, INC.,        )
                                       )
      Defendants.                )

## OPINION AND ORDER

On February 10, 2014, Edmund Michalowski filed suit against then-Illinois State

Treasurer Dan Rutherford and Kyle Ham, Michalowski's direct supervisor, alleging violations of

the First Amendment and the Equal Protection Clause of the Fourteenth Amendment under

42 U.S.C. § 1983.  (Dkt. 1.)  The court dismissed Michalowski's complaint without prejudice

(dkt. 25), and Michalowski filed an amended complaint. (Dkt. 26 ("Compl.").)  In the amended

complaint, Michalowski added as defendants the State of Illinois, the Illinois State Treasurer's

Office ("the ISTO"), Curt Conrad, the Dan Rutherford Campaign Committee ("the Rutherford

Campaign"), and Romney for President, Inc. ("the Romney Campaign").  He also added new

claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*,

and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et*

*seq.*[1]

---

[1] This court's jurisdiction rests on 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 2000e-5(f)(3)
(Title VII), 42 U.S.C. § 1343 (civil rights), and 18 U.S.C. § 1964(c) (RICO).

Four motions to dismiss have been filed: (1) by the Romney Campaign (dkt. 39); (2) by

Ham, Conrad, the State of Illinois, and the ISTO ("the State Defendants") (dkt. 44); (3) by

Rutherford (dkt. 47); and (4) by the Rutherford Campaign (dkt. 51). Rutherford, Ham, and

Conrad ("the individual defendants") also have moved for sanctions against Michalowski's

counsel (dkt. 41), and Michalowski has moved to strike certain exhibits attached to the State

Defendants' and the Romney Campaign's motions to dismiss. (Dkt. 68.) For reasons stated

below, Michalowski's First Amendment and Title VII claims (Counts III and V) are dismissed

with prejudice. Michalowski's RICO claims (Counts I and II) are dismissed without prejudice.

The motion to dismiss Michalowski's hostile work environment claim (Count IV) is denied.

Michalowski's motion to strike is granted, and the individual defendants' motion for sanctions is

denied.

## BACKGROUND[2]

Dan Rutherford was elected Treasurer of the State of Illinois in November 2010 and

assumed office in January 2011. (Compl. ¶ 12.) As of the filing of the amended complaint, Kyle

Ham was chief of staff and Curt Conrad the deputy chief of staff for the ISTO and statewide

political director for the Rutherford Campaign. (*Id.* ¶¶ 6–7.) Rutherford hired Michalowski as

the Deputy Director of Community Affairs for the ISTO in January 2011. (*Id.* ¶ 13.)

Michalowski's official job duties included the "conceptualization, design and management of

statewide marketing policies and programs, and the building of partnerships with diverse groups

including chambers of commerce, labor unions, and veteran, ethnic, religious and civic

organizations." (*Id.* ¶ 15.) Michalowski reported directly to Ham, who reported to Rutherford.

---

[2] Unless otherwise indicated, the following facts are taken from the amended complaint and are presumed true for the purpose of resolving the pending motions. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

(*Id.* ¶¶ 16–17.)  In March 2011, Michalowski received a promotion in title to Director of Community Affairs.  (*Id.* ¶ 19.)  In January 2012, his job was expanded to include the management of the statewide marketing division.  (*Id.* ¶ 49.)  He did not receive a raise as a result of either promotion.  (*Id.* ¶¶ 20, 49.)

## I.      Allegations Related to RICO and First Amendment Claims

Soon after Michalowski started at the ISTO, Rutherford told him that he had been hired because he was a Democrat and Rutherford wanted to appear to as a centrist candidate for governor of Illinois and gain "fresh" sources of campaign funding.  (*Id.* ¶¶ 28–29, 62.)  Rutherford created a spreadsheet listing potential donors and the amount that Michalowski needed to secure from each one for the Rutherford Campaign.  (*Id.* ¶ 31.)

Michalowski and other ISTO employees were given Rutherford Campaign business cards.  (*Id.* ¶ 42.)  Michalowski was also given a Rutherford Campaign email account and Conrad informed him that he was expected to monitor the account for instructions from the Rutherford Campaign.  (*Id.* ¶ 43.)  Rutherford, Conrad, and Ham contacted Michalowski several times during his work hours over the next months and demanded that he perform various tasks for the Rutherford Campaign and the Romney Campaign.[3]  (*Id.* ¶¶ 44–48.)  They told Michalowski that his job was contingent on his performance of political work for both campaigns.  (*Id.* ¶¶ 30, 34, 45.)

As an example of the work he was forced to perform, Michalowski alleges that he was required to coordinate groups of college students to collect signatures for the Romney Campaign.  (*Id.* ¶¶ 53–54.)  After the students failed to collect enough signatures, Rutherford refused to pay

---

[3] Rutherford was appointed Illinois state campaign chair for the Romney Campaign in the summer of 2011.  (Compl. ¶ 22.)

them and told Michalowski that he would be fired if he did not cover the cost of the signature drive out of his own pocket.  (*Id.* ¶¶ 55–57.)

In addition, Michalowski was ordered to donate money to "non-office government functions that would benefit both [the] Rutherford and the Romney Campaigns."  (*Id.* ¶ 50.) When Michalowski complained about the order, Ham informed him that Rutherford required the donations in lieu of political donations to the campaigns.  (*Id.* ¶ 51.)  Michalowski gave the demanded cash donation to Ham at the ISTO in Chicago.  (*Id.* ¶ 52.)

Other ISTO employees also were forced to work for the Rutherford Campaign.  (*Id.* ¶ 58.)  For example, Rutherford required ISTO employees to accompany him to political campaign events and take pictures, which were then mailed to individuals using reduced postage rates available to the State.  (*Id.* ¶ 59.)  Rutherford also used State-employed drivers to transport him to campaign events.  (*Id.* ¶ 64.)  When Michalowski objected to these practices, Rutherford, Conrad, and Ham told him he was a "troublemaker" and that ISTO resources were needed for Rutherford's campaign for governor.  (*Id.* ¶¶ 61–63, 65.)

In the summer and fall of 2013, Ham and Conrad directed Michalowski to organize community marketing events with groups likely to vote for Rutherford.  (*Id.* ¶¶ 66–68.) Rutherford also ordered ISTO employees to find personal contacts to fill the community affairs and marketing calendar to benefit Rutherford's campaign for governor.  (*Id.* ¶ 69.)  When Michalowski objected, Ham threatened that Michalowski would be fired if he did not follow Rutherford's direction.  (*Id.* ¶ 70.)

Michalowski asserts that he was passed over for raises and promotions during his time at the ISTO and that employees who did not complain about the forced work for the Rutherford and Romney campaigns were rewarded with raises and benefits.  (*Id.* ¶¶ 73–74.)  In late 2013,

Rutherford and Ham created a "hit list" of ISTO employees, including Michalowski, who would be fired because they did not adequately support the Rutherford and Romney campaigns. (*Id.* ¶ 72.) Michalowski resigned from the ISTO in February 2014. (*Id.* ¶¶ 4, 103.)[4]

## II. Allegations Related to Sexual Harassment

Michalowski alleges six specific instances of sexual harassment. First, while Michalowski was at Rutherford's house in Chenoa, Illinois on April 2, 2011, Michalowski alleges that Rutherford entered his bedroom and grabbed at his genitals. (*Id.* ¶¶ 75–79.) Michalowski left Rutherford's house immediately. (*Id.* ¶ 79.) Second, Conrad texted Michalowski in July 2011, "The treasurer specifically asked that you wear a tank top. Totally your decision if you want to ignore. I am just a messenger." (*Id.* ¶ 82.) Third, while at a bar with ISTO employees in August 2011, Rutherford complained that Michalowski was talking to a group of women rather than to him and told Michalowski, "[I]f you go home with me, you can have anything you want in the office." (*Id.* ¶¶ 83–89.) Fourth, Rutherford asked Michalowski to go to his hotel room after a reception at the Republican National Convention in August 2012 and became angry when Michalowski refused. (*Id.* ¶¶ 91–93.) Fifth, at a holiday party in December 2013, Rutherford rubbed Michalowski's shoulders and said, "[Y]ou need a full body massage." (*Id.* ¶ 95.) And sixth, in December 2013, Rutherford told another ISTO employee in Michalowski's presence, "I can see your chest through that shirt and t-shirt. Shake it baby, shake it." (*Id.* ¶ 97.)

Michalowski reported the April 2011, August 2011, and August 2012 events to Ham, who responded that the same things had happened to him, told Michalowski he was not a team

---

[4] Michalowski also alleges that Rutherford hired interns to work in the ISTO without conducting interviews or engaging in a formal hiring process. (*Id.* ¶ 35.) Instead, Rutherford hired candidates whose political connections would be useful to his campaign. (*Id.* ¶¶ 36–38.)

player, and stated "at least we have job security." (*Id.* ¶¶ 80–81, 89–90, 94.) Michalowski

alleges that he filed a charge of discrimination against the ISTO and/or the State of Illinois on

February 14, 2014. (*Id.* ¶¶ 146–47.) Michalowski received a notice of right to sue on November

18, 2014. (Dkt. 73.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a

complaint for failure to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6).

In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the

plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.

*Active Disposal, Inc.*, 635 F.3d at 886. To survive a Rule 12(b)(6) motion, the complaint must

not only provide the defendant with fair notice of a claim's basis but must also establish that the

requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct.

1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955,

167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff

need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d

741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. ---, 135 S. Ct. 346, 346,

--- L. Ed. 2d --- (2014) (per curiam) ("Federal pleading rules call for 'a short and plain statement

of the claim showing the pleader is entitled to relief' . . . . [T]hey do not countenance dismissal

of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

## ANALYSIS

### I.      Count I – RICO § 1962(c)

Michalowski claims that all defendants (other than the ISTO and the State of Illinois) violated 18 U.S.C. § 1962(c) by conducting the affairs of the ISTO through a pattern of racketeering activity.  To survive a motion to dismiss a § 1962(c) claim, a plaintiff must have standing and must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Lachmund* v. *ADM Inv. Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) (citations omitted).

### A.      Standing

To state a civil RICO claim, a plaintiff must allege "an injury to [his] business or property result[ed] from the underlying acts of racketeering." *Empress Casino Joliet Corp.* v. *Johnston*, 763 F.3d 723, 728–29 (7th Cir. 2014) (alterations in original) (quoting *Haroco, Inc.* v. *Am. Nat'l B & T Co. of Chi.*, 747 F.2d 384, 398 (7th Cir. 1984)).  "The terms 'business or property' are, of course, words of limitation which preclude recovery for personal injuries and the pecuniary losses incurred therefrom." *Doe* v. *Roe*, 958 F.2d 763, 767 (7th Cir. 1992) (citation omitted).  For purposes of his claim under § 1962(c), Michalowski argues that his injuries are (1) making a forced contribution to "non-office government functions" that benefitted the Rutherford and Romney campaigns, (2) performing unpaid labor for the campaigns, and (3) covering the costs of the failed signature drive for the Romney Campaign.

Michalowski's allegations that he was forced to pay the cost of the signature drive and do unpaid political work are sufficient to state an injury to property for purposes of RICO.  With regard to covering the costs of the drive, "[m]oney, of course, is a form of property." *Reiter* v. *Sonotone Corp.*, 442 U.S. 330, 338, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979); *see also Cobbs* v.

*Sheahan*, 319 F. Supp. 2d 865, 870 (N.D. Ill. 2004) (noting that there "is no question that plaintiff here properly alleged that defendants obtained and attempted to obtain property" because defendants allegedly demanded a political contribution in exchange for a patronage job). As for Michalowski's unpaid labor, courts may look to state law to determine whether a particular interest constitutes property, and Illinois law recognizes that "individuals . . . have a compensable property interest in their toil and labor." *Doe*, 958 F.2d at 768 (citing *Mowrey* v. *Mowrey*, 65 N.E.2d 234, 238, 328 Ill. App. 92 (1946)); *see also Doe I* v. *The Gap, Inc.*, No. CV-01-0031, 2001 WL 1842389, at *4 & n.5 (D.N. Mar. I. Nov. 26, 2001) (collecting cases and finding plaintiffs' allegations that they were forced to work with no pay sufficient to show injury to property for purposes of RICO standing). Accordingly, Michalowski has alleged facts supporting his standing to sue.

###    B.    Enterprise

RICO was designed to prevent the infiltration of a legitimate "enterprise," defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Michalowski alleges that the enterprise is the ISTO. (Compl. ¶ 106.) The State of Illinois and its agencies may be considered enterprises for purposes of RICO. *See United States* v. *Warner*, 498 F.3d 666, 696–97 (7th Cir. 2007).

###    C.    Conduct

For a defendant to be liable under § 1962(c) for the conduct of an enterprise, it must participate "in the operation or management of the enterprise itself." *Reves* v. *Ernst & Young*, 507 U.S. 170, 183, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993). There is no dispute that Rutherford, Ham, and Conrad participated in the operation and management of the ISTO and

thus the amended complaint adequately alleges this element with respect to the individual defendants.

The amended complaint also alleges that the Rutherford and Romney campaigns were "associated with" the ISTO and participated in its operation. (Compl. ¶ 107.) But Michalowski backpedals on this assertion in his combined response to defendants' motions to dismiss. He concedes, "The liability of the Campaigns is not premised on any direct actions of their own . . . . The Campaigns are instead vicariously liable for the actions of the individual defendants under respondeat superior." (Dkt. 59 at 13.)

Vicarious liability only applies in civil RICO claims where "(1) the corporation has derived some benefit from the RICO violation and (2) imposing vicarious liability is not inconsistent with the intent of Congress."[5] *Liquid Air Corp.* v. *Rogers*, 834 F.2d 1297, 1306 (7th Cir. 1987). With regard to the second element, it is inconsistent with the intent of Congress to hold a corporation that was the victim of a violation of § 1962(c) liable under a *respondeat superior* theory. *Id.* And even where the defendant is distinct from the RICO enterprise for purposes of § 1962(c), "courts have suggested that imposing vicarious liability is still inconsistent with the congressional intent behind this subsection when the corporation has no knowledge of the criminal behavior of its agents or employees." *Schwarz* v. *Nat'l Van Lines, Inc.*, No. 03 C 7096, 2004 WL 1497804, at *4 (N.D. Ill. July 2, 2004). Accordingly, courts have determined that vicarious liability applies for purposes of RICO only "where the corporation plays the role of the 'central figure' or 'aggressor' in the alleged scheme." *Nystrom* v. *Associated Plastic Fabricators, Inc., Profit-Sharing & Savings Plans & Trust*, Nos. 98 C134,

---

[5] The Rutherford Campaign argues that the Seventh Circuit foreclosed vicarious liability in RICO actions under § 1962(c), citing *D&S Auto Parts, Inc.* v. *Schwartz*, 838 F.2d 964, 968 (7th Cir. 1988). But, like other courts in this circuit, the court rejects this strict interpretation of the *D&S Auto Parts* opinion. *See, e.g.*, *Williams Elecs. Games, Inc.* v. *Barry*, 42 F. Supp. 2d 785, 791–93 (N.D. Ill. 1999).

98 C 4282, 1999 WL 417848, at *8 (N.D. Ill. June 18, 1999) (citation omitted); *Aspacher* v. *Kretz*, No. 94 C 6741, 1997 WL 692943, at *12 (N.D. Ill. Aug., 13, 1997); *Ash* v. *Wallenmeyer*, No. 85 C 8557, 1986 WL 10379, at *2 (N.D. Ill. Sept. 18, 1986) ("While a corporation can only act through its agents and officers, there must be some indication that the corporation, as an entity separate from an individual employee, consented to or took an active part in the fraudulent conduct or racketeering activities in order to be held liable as a 'person' under Section 1962(c)."). The court finds this approach persuasive and applies it here.

### 1.    Vicarious Liability of the Romney Campaign

Although Michalowski alleges that the Romney Campaign benefited from the operation of the alleged scheme, he does not allege facts from which one could infer that the Romney Campaign was a knowing member, let alone a "central figure," in the alleged scheme of racketeering activity at the ISTO. Michalowski alleges only that Rutherford was appointed as the Illinois chair for the Romney Campaign and that he and Conrad required that Michalowski perform work for and donate money to the campaign. Michalowski's allegations do not suggest that the Romney Campaign (as an entity separate from Rutherford) encouraged, consented to, or even knew about the actions attributed to Rutherford and Conrad in the amended complaint. *See Ash*, 1986 WL 10379, at *2. Thus, Michalowski has failed to state a claim under § 1962(c) against the Romney Campaign.

### 2.    Vicarious Liability of the Rutherford Campaign

Michalowski also argues that the Rutherford Campaign should be held vicariously liable for the actions of its statewide political director, Conrad. Again Michalowski sufficiently alleges that the Rutherford Campaign benefited from the alleged scheme through monetary contributions and Michalowski's labor. And, unlike the allegations with respect to the Romney Campaign,

Michalowski's allegations against the Rutherford Campaign indicate that its statewide political director Conrad and Rutherford himself were involved in the alleged misconduct.  (*See* Compl. ¶ 8.)  Because the Rutherford Campaign can be charged with the knowledge and intent of its high-level officers, including Conrad, *see Ashland Oil, Inc.* v. *Arnett*, 875 F.2d 1271, 1281 (7th Cir. 1989), it may be held vicariously liable for the actions of its officers that are to its benefit. *Cf. Gruber* v. *Prudential-Bache Secs., Inc.*, 679 F. Supp. 165, 181–82 (D. Conn. 1987) (declining to impose vicarious liability on a corporation for the racketeering acts of "low-level" employees and noting that a plaintiff must allege knowledge or reckless indifference at the "high corporate level").  Michalowski adequately alleges the conduct element of § 1962(c) against the Rutherford Campaign.

### D. Racketeering Activity

Racketeering activity is limited to specific criminal acts, called predicate acts, set forth in 18 U.S.C. § 1961(1).  Section 1961(1)(A) includes "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1)(A).[6]  For a state offense to involve extortion under § 1961(1)(A), "the conduct must be capable of being generically classified as extortionate." *Scheidler* v. *Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409, 123 S. Ct. 1057, 154 L. Ed. 2d 991 (2003).  "'[G]eneric' extortion is defined as 'obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats.'"  *Id.* (quoting *United States* v. *Nardello*, 393 U.S. 286, 290, 89 S. Ct. 534, 21 L. Ed. 2d 487 (1969)).

---

[6] Michalowski fails to cite this subsection in his amended complaint and, according to the Romney Campaign, "that alone is a sufficient basis for dismissal."  (Dkt. 39-1 at 5 n.3.)  But as the Supreme Court recently emphasized, courts should not dismiss complaints for an "imperfect statement of the legal theory supporting the claim asserted."  *Johnson*, 135 S. Ct. at 346.

In this case, Michalowski alleges that the individual defendants[7] engaged in two types of extortionate predicate acts: (1) official misconduct in violation of 720 Ill. Comp. Stat. 5/33-3(a)(2) and (2) intimidation in violation of 720 Ill. Comp. Stat. 5/12-6.

### 1. Official Misconduct – 720 Ill. Comp. Stat. 5/33-3(a)(2)[8]

Illinois' official misconduct statute forbids a public officer, in his official capacity, from "[k]nowingly perform[ing] an act which he knows he is forbidden by law to perform." 720 Ill. Comp. Stat. 5/33-3(a)(2). Violation is a class 3 felony punishable by two to five years in prison. *See* 720 Ill. Comp. Stat. 5/33-3(c); 730 Ill. Comp. Stat. 5/5-4.5-40. Michalowski alleges that defendants knowingly performed acts forbidden by law by (1) soliciting political contributions on State property in violation of 5 Ill. Comp. Stat. 430/5-35 and (2) requiring State employees to engage in prohibited political activity in violation of 5 Ill. Comp. Stat. 430/5-15. Both of these crimes are misdemeanors. As such, Michalowski endeavors to convert misdemeanant conduct into an unspecified predicate felony by passing it through the official misconduct statute. As stated in *United States* v. *Genova*, 333 F.3d 750, 758 (7th Cir. 2003), "no misdemeanor is 'racketeering activity' under RICO." *Id.* Furthermore, official misconduct under 720 Ill. Comp. Stat. 5/33-3(a)(2), albeit a felony, "does not read like a definition of [extortion]" and therefore is not racketeering activity under RICO. *See id.* at 758. Any claim based on a defendant's commission of official misconduct under 720 Ill. Comp. Stat. 5/33-3(a)(2) fails to state a claim upon which relief may be granted.

---

[7] As discussed above, the Rutherford Campaign can be vicariously liable for the actions of its high-level officials.

[8] Throughout their briefs, the parties refer to this section as 5/33-3(b), a convention used previously by other courts in this circuit. The current version of the statute, however, indicates that the section relied on by Michalowski is 5/33-3(a)(2).

### 2.    Intimidation – 720 Ill. Comp. Stat. 5/12-6

Racketeering activing under § 1961(1)(A) includes "any act or threat involving . . .

extortion . . . which is chargeable [as a felony] under State law[.]"  Illinois, however, does not

have a crime of extortion.  "Instead, conduct that would be described as 'extortion' under the

laws of most other jurisdictions is prohibited in Illinois under the heading of 'intimidation.'"

*United States* v. *Unthank*, 109 F.3d 1205, 1210 (7th Cir. 1997).[9]  In relevant part, Illinois law

provides,

> A person commits intimidation when, with intent to cause another
> to perform or to omit the performance of any act, he or she
> communicates to another . . . a threat to perform without lawful
> authority any of the following acts . . . (6) Take action as a public
> official against anyone or anything, or withhold official action, or
> cause such action or withholding . . . .

720 Ill. Comp. Stat. 5/12-6(a).[10]  The Romney Campaign argues that Michalowski's allegations

do not constitute a RICO predicate under Illinois' crime of intimidation because the threat was

not directed at "'obtaining something of value from another with his consent induced by the

wrongful use of force, fear, or threats,'" something of value being defined as something a

defendant "'could exercise, transfer, or sell.'"  (Dkt. 39-1 at 8 (quoting *Scheidler*, 537 U.S. at

405, 409).).

Although it is clear that the Illinois crime of intimidation cannot serve as a RICO

predicate if the plaintiff does not allege that the defendant demanded something of value, there is

---

[9] *Unthank* determined that a defendant's conviction of intimidation qualified as a crime of
violence for purposes of the Sentencing Guidelines.

[10] Michalowski does not specify which subsection of the intimidation statute the defendants
allegedly violated, but a review of the bases for intimidation shows that 720 Ill. Comp. Stat. 5/12-6(a)(6)
is the only subsection supported by the alleged facts.

disagreement as to whether the crime can serve as a predicate act if the plaintiff does so allege.[11]

*Compare Overnite Transp. Co.* v. *Truck Drivers, Oil Drivers, Filling Station & Platform Workers Union Local No. 705*, 704 F. Supp. 859, 862 (N.D. Ill. 1989) (intimidation could be a RICO predicate act because "RICO does not require every act in violation of a particular state statute constitute 'racketeering activity' in order for some violations of the statute to do so"), *Ruiz* v. *Kinsella*, 770 F. Supp. 2d 936, 942 (N.D. Ill. 2011) (citing *Overnite* for the proposition that intimidation under Illinois law can serve as a RICO predicate act), *and Roger Whitmore's Auto. Servs., Inc.* v. *Lake Cnty., Ill.*, No. 99 C 2504, 2002 WL 959587, at *3 n.2 (N.D. Ill. May 9, 2002) (finding intimidation under Illinois law "almost certainly" constitutes extortion for RICO purposes), *with SKS Assocs.* v. *Vill. of Oak Lawn*, No. 10 C 1083, 2010 WL 3735733, at *1 (N.D. Ill. Sept. 16, 2010) (stating without citing authority or rationale that intimidation cannot be a predicate act) *and McKinney* v. *State of Ill.*, 720 F. Supp. 706, 708 (N.D. Ill. 1989) (intimidation not among crimes listed under § 1961(1)). Because *Roger Whitmore's* and *SKS Assocs.* were decided before *Scheidler*, the court adopts the view that intimidation can serve as a predicate act if the conduct is "extortionate" in the generic sense as defined in *Scheidler*, *i.e.*, it involves "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." *Scheidler*, 537 U.S. at 409 (citation omitted) (internal quotation marks omitted).

That said, whether conditioning employment decisions on campaign contributions is extortionate is not settled. *Compare Micnerski*, 2003 WL 22159025, at **2–3 (not extortionate), *with Cobbs*, 319 F. Supp. 2d at 870–71 (extortionate). The plaintiffs in *Cobbs* and *Micnerski*

---

[11] As discussed above, Michalowski asserts that the defendants received "something of value" from him in the form of forced donations, the costs of the signature drive, and unpaid labor on the campaigns. At the very least, the allegations regarding the costs of the drive and the coerced work on the campaigns are sufficient to allege that something of value was gained by the defendants.

both worked at the Cook County Sheriff's Department and alleged that they suffered adverse employment decisions when they objected to routine requests to make contributions to the sheriff's campaign. *See Cobbs*, 319 F. Supp. 2d at 869; *Micnerski*, 2003 WL 22159025, at *1. In *Micnerski*, the court, expressing concern about expansion of the compass of predicate crimes, concluded that it would be "unreasonable to extend the reach of the RICO statute to allow the conduct complained of here to pass muster as a predicate act." *Micnerski*, 2003 WL 22159025, at **2–3 (citing *Scheidler*, 537 U.S. at 412). In *Cobbs*, the court held that "demand for a political contribution in return for a patronage job constitutes extortion." *Cobbs*, 319 F. Supp. 2d at 870. Although both cases are well reasoned, the court adopts the view of *Cobbs* that explicitly conditioning an employment decision on campaign contributions qualifies as extortion. In this case, Rutherford had the right to terminate Michalowski for any lawful reason, but if he (or the other defendants) obtained contributions and unpaid labor from Michalowski through threatened termination from employment, the conduct would be extortionate, and therefore unlawful.

### E.    Pattern

"[T]o prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.* v. *Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989). At a minimum, there must be at least two predicate acts of racketeering activity over a ten-year period, 18 U.S.C. § 1961(5), and relationship between the predicate acts and a threat of continuing criminal activity—in other words, "relatedness" and "continuity." *See H.J. Inc.*, 492 U.S. at 239. This standard is known as the "continuity plus relationship" test. *DeGuelle* v. *Camilli*, 664 F.3d 192, 199 (7th Cir. 2011) (citing *H.J. Inc.*, 492 U.S. at 239, 242).

15

Michalowski includes several allegations of extortionate activity. He states, "On multiple occasions throughout Plaintiff's employment, Defendants Rutherford, Ham, and Conrad told Plaintiff that if he did not perform political work and solicit donations to the level of Defendant Rutherford's expectations, then Plaintiff would be fired." (Compl. ¶ 34.) He asserts that Rutherford threatened him with termination if he did not raise enough money in early 2011 (*id.* ¶ 30) and that Conrad told him that his job was contingent on performing political work later in 2011 (*id.* ¶ 45). He also alleges that other ISTO employees "were required to perform political work for the Rutherford Campaign as a condition of their jobs." (*Id.* ¶ 58.) Further, he alleges that in later 2013 Rutherford and Ham created a "hit list" of ISTO employees to be fired because of their lack of political support. (*Id.* ¶ 71.) These instances are clearly related in that they have the same purpose of forcing Michalowski (and other ISTO employees) to contribute to the campaigns—either monetarily or otherwise—by threatening termination. *See H.J. Inc.*, 492 U.S. at 240.

Continuity, however, is not demonstrated. "[A] RICO plaintiff can satisfy the continuity prong either by (1) demonstrating a close-ended series of conduct that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended series of conduct that, while short-lived, shows clear signs of threatening to continue into the future." *Roger Whitmore's Auto Services, Inc.* v. *Lake County, Ill.*, 424 F.3d 659, 672 (7th Cir. 2005) (quoting *H.J. Inc.*, 492 U.S. at 241). Continuity turns on "(1) the number and variety of predicate acts and the length of time over which they were committed, (2) the number of victims, (3) the presence of separate schemes, and (4) the occurrence of distinct injuries." *Id.* (citing *Morgan* v. *Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986)). No single factor is dispositive. Rather, the analysis is "fact-specific" and aimed at achieving a "'natural and

16

commonsense"' result "consistent with Congress's concern with long-term criminal conduct." *Id.* (quoting *Olive Can Co.* v. *Martin*, 906 F.2d 1147, 1151 (7th Cir. 1990)).

"[A] closed period of racketeering activity involves a course of criminal conduct that has ended." *Id.* at 672. Because the campaigns ended with the elections,[12] Michalowski has alleged a closed period, and common sense suggests that there is no credible threat of future harm, particularly since Rutherford lost the primary election and his office as Treasurer has ended. Applying the above factors reinforces this conclusion. Michalowski alleges that the scheme of extortionate conduct spanned three years—between Michalowski's hiring in January 2011 and the day he resigned in February 2014. *See id.* at 673 (*"*Although we have not employed a bright-line rule for how long a closed period must be to satisfy continuity, we have not hesitated to find that closed periods of several months to several years did not qualify as 'substantial' enough to satisfy continuity."). He has alleged a single series of extortionate acts directed at raising money for the two campaigns, a fact that weighs against satisfaction of the continuity requirement. *See id.* at 673–74 ("Although a RICO pattern may be established on the basis of a single scheme, it is not irrelevant, in analyzing the continuity requirement, that there is only one scheme." (citations omitted) (internal quotation marks omitted)). Michalowski alleges only two specific extortionate acts in which his job was threatened, one occurring in early 2011 and the other "later" in 2011. Although he generally alleges that similar threats were made to him and others, they lack any specificity as to time, place, or occasion, such that one could reasonably infer that extortion occurred or how many others were victimized. *See id.* at 673 (broad assertions and few predicate

---

[12] The court takes judicial notice that President Barack Obama was elected President of the United States over Mitt Romney in 2012, and that Rutherford ran unsuccessfully in the Illinois Republican gubernatorial primary in 2014, leaving open his office as Treasurer after the general election. *See* Fed. R. Evid. 201(b) (courts may take judicial notice of facts "generally known within the trial court's territorial jurisdiction"); *id.* 201(c)(1) (courts may take judicial notice on their own); *see also United States* v. *Hemphill*, 447 Fed. App'x 733, 736 (7th Cir. 2011) (noting these principles).

acts cut against showing continuity). And finally, Michalowski has alleged, at most, only three distinct injuries—namely, coerced indirect monetary contributions to the Rutherford and Romney campaigns, forced payment of the costs of the signature drive, and unpaid political labor. Michalowski has not indicated that the individual defendants engaged in other racketeering schemes before or after the closed period associated with the campaigns. All of these factors point to the conclusion that he has not alleged continuity. *See id.* at 674.

As stated, because the campaigns have ended, there is little need to address open-ended continuity. Obviously, the facts alleged in the amended complaint do not fulfill relevant factors such as a "specific threat of repetition" or predicates that "can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *Vicom*, 20 F.3d at 782 (citation omitted) (internal quotation marks omitted). As in *Roger Whitmore's*, Michalowski "pleaded himself out of showing a continuing threat of continued activity" because the alleged schemes had a natural ending point when the election efforts came to a close. *Roger Whitmore's*, 424 F.3d at 674. Because Michalowski has failed to allege a pattern of racketeering activity, his § 1962(c) claim must be dismissed. *See Luis* v. *Smith Partners & Assocs., Ltd.*, No. 12 C 2922, 2012 WL 5077726, at **4–6 (N.D. Ill. Oct. 18, 2012) (dismissing RICO claim when plaintiffs failed to plead either closed- or open-ended continuity).

## II.    Count II – RICO § 1962(d)

Count II alleges that all of the defendants other than the State of Illinois and the ISTO engaged in a § 1962(d) RICO conspiracy to violate § 1962(c). Where a plaintiff fails to allege a claim under § 1962(c), however, the plaintiff's § 1962(d) claim based on the same nucleus of operative facts fails as well. *See Stachon* v. *United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000); *Cook-Illinois Corp.* v. *Teamsters Local No. 777*, No. 11 CV 8884, 2012 WL

1655976, at *6 (N.D. Ill. May 10, 2012); *Meier* v. *Musburger*, 588 F. Supp. 2d 883, 911–12

(N.D. Ill. 2008) (noting that the "cases are uniform in holding that failure to make out a

substantive RICO claim requires dismissal of a conspiracy claim based on the same nucleus of

operative fact" because "[a] conspirator must intend to further an endeavor which, if completed,

would satisfy all of the elements of a substantive RICO offense under § 1962(a), (b), or (c)").

Here, for the reasons stated above Michalowski's claim under § 1962(c) fails against all of the

RICO defendants, and Michalowski's § 1962(d) claim is based on the same allegations.

Accordingly, his § 1962(d) claim must be dismissed.

### III.    Count III – First Amendment Claim

Michalowski claims that the individual defendants violated his First Amendment right "to

not have an affiliation or to support an official or political party in power." (Compl. ¶ 118.)

Michalowski's claim is slightly different from the typical "'political patronage hiring and firing'"

claims that have been the subject of many lawsuits in this district. *E.g.*, *Steigmann* v.

*Democratic Party of Ill.*, 406 F. Supp. 2d 975, 976 (N.D. Ill. 2005) (quoting *Thompson* v. *Ill.

Dep't of Prof. Reg.*, 300 F.3d 750, 751–52 (7th Cir. 2002)). Indeed, Michalowski was not fired

by an incoming political party; rather, he allegedly was hired by Rutherford, a Republican, for

his ties to the Democratic Party. (*See* Compl. ¶ 29.) Michalowski claims that when he did not

deliver the expected political support, the individual defendants denied him promotions and pay

raises, ridiculed him, and included him on a "hit list" to be fired after the election. (*Id.* ¶ 121.)

A state actor may not make employment decisions based on political affiliation unless

"the nature of [the public official's] job makes political loyalty a valid qualification." *Riley* v.

*Blagojevich*, 425 F.3d 357, 359 (7th Cir. 2005); *see also Branti* v. *Finkel*, 445 U.S. 507, 518,

100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980); *Elrod* v. *Burns*, 427 U.S. 347, 367–68, 96 S. Ct. 2673,

49 L. Ed. 2d 547 (1976). Political loyalty is a valid qualification when the job "involves the making of policy and thus the exercise of political judgment or the provision of political advice" or "gives the holder access to his political superiors' confidential politically sensitive thoughts." *Riley*, 425 F.3d at 359. For example, the Seventh Circuit determined that the position of Bureau Chief of Accounting and Auditing for the Illinois Department of Transportation ("IDOT") was a policymaking position because its holder had broad discretion over IDOT accounting and auditing. *Allen* v. *Martin*, 460 F.3d 939, 943–46 (7th Cir. 2006). The job responsibilities included establishing procedures and informing management of possible problems and "considerable input into government decisionmaking and the implementation of goals stemming from that process" because of the position holder's ability to direct his concerns and possible solutions to his superior. *Id.* at 945. In addition, the "effective and reliable execution" of the Bureau Chief's job was of "great political value" and had "great impact on the administration's public reputation." *Id.* In concluding that the bureau chief was a policymaking position, the Seventh Circuit emphasized that the ability to provide *input* into government decision making was critical to its determination and it was not necessary that the position holder be able to set his own goals or make final decisions. *Id.*

Michalowski began as Deputy Director of Community Affairs at the ISTO and was promoted to Director of Community Affairs about three months later. (Compl. ¶¶ 4, 19.) Although the amended complaint alleges that these positions "do not require a political affiliation" (*id.* ¶ 115), it describes the specific job activities as including the "conceptualization, design and management of statewide marketing policies and programs, and the building of partnerships with diverse groups including chambers of commerce, labor unions, and veteran, ethnic, religious and civic organizations." (*Id.* ¶ 15.) These responsibilities are similar to those

detailed in *Allen*.   Michalowski had discretion to create policy and programs run by the ISTO; he had the ability to direct concerns and solutions to his superiors and the opportunity to provide input into government policy.   Further, the effective and reliable execution of Michalowski's job that, based on his own allegations, included significant interaction with community groups, could have affected the ISTO's public reputation.   Although Michalowski argues that the determination whether his position was a policymaking position is fact intensive and should be deferred until summary judgment, the court concludes that the position included policymaking authority based solely on Michalowski's own description.[13]   Thus, Michalowski's First Amendment claim must be dismissed.  *See Steigmann*, 406 F. Supp. 2d at 989.

Michalowski maintains that even if he was a policymaking employee, his position did not require him to support the campaigns, which Michalowski labels "external political organizations."  (Dkt. 56 at 18.)  Instead, according to Michalowski, he was only obligated to support the defendants' political agenda as it related to the operation of the ISTO.  (*Id.*)  The distinction drawn by Michalowski is unpersuasive.  While the government may not retaliate against a policymaking employee for "speech on public matters unconnected to political affiliation or policy viewpoints," *Embry* v. *City of Calumet City, Ill.*, 701 F.3d 231, 235 (7th Cir.

---

[13] Michalowski moves to strike (dkt. 68) the job description appended to the State Defendants' motion to dismiss.  (*See* dkt. 45-1.)  The State Defendants also appended the job description to their reply in support of their motion to dismiss and to their response to the motion to strike.  (*See* dkts. 63-1, 70-1.)  Further, the State Defendants attached a declaration to their response to the motion to strike purportedly authenticating the job description.  (Dkt. 70-1.)  It is a close question whether a properly authenticated job description could be considered in this case because, although it is not referred to in the amended complaint, it is central to Michalowski's claim.  *See, e.g.*, *Steigmann*, 406 F. Supp. 2d at 986 (considering job description referred to in employment contracts when contracts were mentioned in complaint and description was central to plaintiff's claim).  In any event, the court finds that Michalowski's job description in the amended complaint is sufficient to dispose of this issue.  Thus, Michalowski's motion to strike the job description will be granted.  Moreover, the portion of Michalowski's motion to strike directed at the newspaper articles appended to the Romney Campaign's motion to dismiss (*see* dkts. 39-2, 39-3, 39-4.) is granted because the court is able to dispose of the motions to dismiss without reference to these exhibits.

2012) (citations omitted), it is undeniable that support (or lack thereof) for a political campaign relates to political affiliation and policy viewpoints. Political affiliation and support for political campaigns are often intimately intertwined, and it is difficult, and in some circumstances impossible, to distinguish between the two. *See Branti*, 445 U.S. at 518 (noting that a state governor may appropriately determine that the duties of his assistants "cannot be performed effectively unless those persons share his beliefs *and* party commitments" (emphasis added)). In this case, the nature of Michalowski's position made political affiliation—of which support for particular campaigns is a part—a valid qualification. Thus, the requirement that Michalowski exhibit support for the campaigns is not a First Amendment violation, even if it may be a violation of Illinois law. *See, e.g.*, 5 Ill. Comp. Stat. 430/5-15(b) ("At no time shall any executive . . . branch . . . officer . . . intentionally misappropriate the services of any State employee by requiring that State employee to perform any prohibited political activity . . . as a condition of State employment.").

Finally, although not clearly articulated in the amended complaint, Michalowski contends in his response that his First Amendment free speech rights were violated when the defendants retaliated against him for complaining about the use of the ISTO's resources to campaign for Rutherford and Romney. A public employee bringing a First Amendment retaliation claim must establish that "(1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter speech, and (3) his speech was at least a motivating factor in the employer's action." *Swetlik* v. *Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (citation omitted). The individual defendants assert that Michalowski's speech was not protected.

For a public employee's speech to be protected, he must establish that (1) the speech was made as a private citizen, (2) it addressed a matter of public concern, and (3) his interest in

expressing the speech was not outweighed by the State's interest as an employer in promoting effective and efficient public service. *Id.*; *see also Kubiak* v. *City of Chi.*, No. 14 C 1159, 2014 WL 4248034, at *2 (N.D. Ill. Aug. 27, 2014). Michalowski's complaints fail the first prong of this test because he raised them to his superiors as part of his official duties rather than in his capacity as a private citizen. *See Vose* v. *Kliment*, 506 F.3d 565, 570 (7th Cir. 2007) (police officer reporting misconduct of officers in another unit was not acting as a private citizen); *Sigsworth* v. *City of Aurora, Ill.*, 487 F.3d 506, 511 (7th Cir. 2007) (plaintiff was not speaking as a citizen when he reported his colleagues' misconduct to supervisors); *Foster* v. *Blagojevich*, No. 04 C 2069, 2006 WL 1375060, at *5 (N.D. Ill. May 18, 2006) (assistant warden acting within his official duties in speaking out against unlawful hiring practices and other issues at department of corrections). Michalowski's First Amendment claim against Rutherford, Ham, and Conrad must be dismissed.

## IV. Count IV – Sexual Harassment (§ 1983)

Michalowski brings Count IV pursuant to 42 U.S.C. § 1983 and asserts gender discrimination in the form of sexual harassment against Rutherford in violation of the Equal Protection Clause of the Fourteenth Amendment. The allegations point to a hostile work environment claim based on gender. A hostile work environment claim requires Michalowski satisfy the same requirements as a Title VII sexual harassment claim and also show that Rutherford intended to discriminate against him based on his gender. *Trautvetter* v. *Quick*, 916 F.2d 1140, 1149 (7th Cir. 1990); *Chivers* v. *Central Noble Cmty. Schs.*, 423 F. Supp. 2d 835, 851 (N.D Ind. 2006).

To state a sexual harassment claim based on a hostile working environment under Title VII, Michalowski must allege that he

> (1) . . . was subjected to unwelcome sexual harassment in the form
> of sexual advances, requests for sexual favors or other verbal or
> physical conduct of a sexual nature; (2) the harassment was based
> on sex; (3) the sexual harassment had the effect of unreasonably
> interfering with the plaintiff's work performance in creating an
> intimidating, hostile or offensive working environment that
> affected seriously the psychological well-being of the plaintiff; and
> (4) there is a basis for employer liability.

*Valentine* v. *City of Chi.*, 452 F.3d 670, 677 (7th Cir. 2006) (quoting *Parkins* v. *Civil*

*Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)) (internal quotation marks

omitted). Sexual harassment that is so "severe or pervasive as to alter the conditions of the

victim's employment and creates an abusive working environment violates Title VII."

*Faragher* v. *City of Boca Raton*, 524 U.S. 775, 786, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)

(citation omitted) (internal quotation marks omitted); *Patton* v. *Keystone RV Co.*, 455 F.3d 812,

815–16 (7th Cir. 2006). The work environment must be "both objectively and subjectively

offensive, one that a reasonable person would find hostile or abusive, and one that the victim in

fact did perceive to be so." *Faragher*, 524 U.S. at 787; *Hilt-Dyson* v. *City of Chi.*, 282 F.3d 456,

463 (7th Cir. 2002). Rutherford asserts that Michalowski has not alleged conduct that was

objectively offensive and severe or pervasive.[14]

Although there is no bright-line test for determining when a work environment becomes

objectively hostile, courts consider a variety of factors "including the frequency and severity of

conduct, whether it is threatening and/or humiliating or merely offensive, and whether the

harassment unreasonably interferes with an employee's work." *Wyninger* v. *New Venture Gear,*

*Inc.*, 361 F.3d 965, 975–76 (7th Cir. 2004) (citations omitted). Rutherford is correct that

"'simple teasing,' . . . offhand comments, and isolated incidents (unless extremely serious) will

---

[14] Rutherford also maintains, making a series of fact-specific arguments, that Michalowski has
failed to allege that the work environment was subjectively offensive. (*See* dkt. 49 at 10.) Michalowski's
allegations, however, indicate that he found the work environment subjectively offensive.

not amount to discriminatory changes in the 'terms and conditions of employment,'" *Faragher*, 524 U.S. at 778 (internal citation omitted), and not all of the incidents alleged by Michalowski suggest objectively offensive or severe conduct on the part of Rutherford. *See, e.g.*, *Moser* v. *Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005) ("second-hand harassment" less objectionable than harassment directed at the plaintiff); *Hilt-Dyson*, 282 F.3d at 464 (shoulder rubbing not *per se* objectionable). Nevertheless, Michalowski alleges that Rutherford grabbed at his genitals in the guest bedroom of the Rutherford residence, and on two occasions grabbed his arm before making sexual comments. (Compl. ¶¶ 78, 87, 93.) These allegations go "beyond offhand comments and into physical assault" and "raise[] the possibility of severe or pervasive sexual harassment from a speculative to a plausible level," which is all that is required at this stage. *Gardner* v. *City of Chi.*, No. 12-C-5184, 2012 WL 5381258, at *3 (N.D. Ill. Oct. 31, 2012) (denying motion to dismiss Title VII hostile work environment claim); *see also Twombly*, 550 U.S. at 556.

Rutherford also asserts that Michalowski has failed to allege that Rutherford intended to discriminate against him based on his gender because Michalowski's allegations of intent are "conclusory." (Dkt. 49 at 10.) But intent may be alleged generally and Michalowski alleges, "Rutherford's sexual harassment of Plaintiff was based upon Plaintiff's gender." (Compl. ¶ 130.) This general allegation of intent is sufficient. *See Bennett* v. *Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("Because success . . . under the equal protection clause . . . enforced via 42 U.S.C. § 1983 . . . requires proof of intentional discrimination, a plaintiff might want to allege intent—although this is implied by a claim of racial 'discrimination.'").

Next, Rutherford contends that even if Michalowski has stated a hostile work environment claim, Rutherford is entitled to qualified immunity as a matter of law. (Dkt. 49 at

13.)  Government actors performing discretionary functions are "'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sallenger* v. *Oakes*, 473 F.3d 731, 739 (7th Cir. 2007) (quoting *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  To determine whether qualified immunity applies, courts consider (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, establish the violation of a constitutional right and (2) if so, whether that right was clearly established at the time of the alleged violation.  *Saucier* v. *Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  If the answer to either of the two inquiries is no, Rutherford is entitled to qualified immunity.  *See id.*

While qualified immunity must be resolved at the earliest possible stage, *see Leatherman* v. *Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166, 113 S. Ct. 1160, 86 L. Ed. 2d 517 (1993), the Seventh Circuit has cautioned that this rule "must be tempered by the notice pleading requirements of Rule 8." *Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008) (citing *Jacobs* v. *City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)); *see also Alvarado* v. *Litscher*, 267 F.3d 648, 651–52 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.").  Here, as discussed above, Michalowski alleged facts sufficient to state a hostile work environment claim, and he has thus satisfied the first prong.  Moreover, the right to be free from sexual harassment in the workplace was clearly established at the time of the alleged violation.  *See Trautvetter*, 916 F.2d at 1149 (recognizing a claim for sexual harassment under the Equal Protection Clause pursuant to § 1983).  Thus, taking the facts alleged

26

in the amended complaint as true and drawing all inferences in Michalowski's favor, Rutherford violated a clearly established constitutional right and he is not entitled to dismissal based on qualified immunity. *See Tamayo*, 526 F.3d at 1090–91; *Terry* v. *Talmontas*, No. 11 CV 6083, 2013 WL 707907, at **6–7 (N.D. Ill. Feb. 26, 2013) (declining to find qualified immunity at the motion to dismiss stage).

## V.     Count V – Sexual Harassment (Title VII)

Michalowski asserts a claim of sexual harassment against the ISTO and the State of Illinois under Title VII. The ISTO and the State of Illinois correctly note that public appointees involved in policymaking are not entitled to relief under Title VII. *See* 42 U.S.C. § 2000e(f). An individual is a policymaking appointee if "'the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation.'" *Opp* v. *Off. of State's Attorney of Cook Cnty.*, 630 F.3d 616, 619 (7th Cir. 2010) (quoting *Americanos* v. *Carter*, 74 F.3d 138, 141 (7th Cir. 1996)). The test used to determine if an individual is an employee within the meaning of Title VII "is essentially indistinguishable" from that used to ascertain whether a plaintiff is a policymaking employee in the First Amendment context. *Americanos*, 74 F.3d at 144. As discussed above, Michalowski's position involved substantive input into government policy and the execution of his job would have affected the public reputation of the ISTO. For these reasons and the others discussed previously, the court finds that Michalowski was a policymaking appointee within the meaning of Title VII, and therefore, his claim for sexual harassment under Title VII must be dismissed.

## VI.    Motion for Sanctions

Finally, Rutherford, Ham, and Conrad move for sanctions against Michalowski's counsel. Federal Rule of Civil Procedure 11(b)(2) provides that by "presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). The gravamen of the individual defendants' motion is that Michalowski's counsel has raised "patently baseless" RICO claims because the RICO claims "are based on alleged violations of Illinois law that are not RICO predicate acts." (Dkt. 41 ¶ 1.)

Although the court agrees with the individual defendants that Michalowski's counsel failed to allege RICO claims adequately, counsel's legal arguments are not without some support in this circuit. As discussed above, the use of official misconduct under 720 Ill. Comp. Stat. 5/33-3(a)(2) is not entirely foreclosed by controlling law. Likewise, there is authority for the proposition that intimidation under 720 Ill. Comp. Stat. 5/12-6 can serve as a predicate act for purposes of RICO. *See Ruiz*, 770 F. Supp. 2d at 942; *Overnite Transp. Co.*, 704 F. Supp. at 862; *Roger Whitmore's Auto. Servs., Inc.*, 2002 WL 959587, at *3 n.2. In such circumstances, sanctions are disfavored.[15] *See LaSalle Nat'l Bank of Chi.* v. *Cnty. of DuPage*, 10 F.3d 1333, 1338 (7th Cir. 1993) ('Because Rule 11 'is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories,' an attorney need not advance a winning argument

---

[15] Moreover, because the court has determined that Michalowski has standing for purposes of his RICO claims, the individual defendants' argument on this point is unpersuasive. In addition, as Michalowski has withdrawn his request for injunctive relief (dkt. 56 at 2 n.1) the individual defendants' argument on this front is moot.

to avoid Rule 11 sanctions." (citation omitted)); *see also Hartmarx Corp.* v. *Abboud*, 326 F.3d 862, 867 (7th Cir. 2003) (noting that "sanctions are to be imposed sparingly"). The court declines to exercise its discretion to sanction counsel.

## CONCLUSION AND ORDER

For the foregoing reasons, the motions to dismiss filed by the Romney Campaign (dkt. 39); Ham, Conrad, the State of Illinois, and the Illinois State Treasurer's Office (dkt. 44); Rutherford (dkt. 47); and the Rutherford Campaign (dkt. 51) are granted in part and denied in part. Michalowski's First Amendment and Title VII claims (Counts III and V) are dismissed with prejudice. Michalowski's RICO claims (Counts I and II) are dismissed without prejudice. The motion to dismiss Michalowski's § 1983 hostile work environment claim (Count IV) is denied. Michalowski's motion to strike (dkt. 68) is granted, and Rutherford's, Ham's, and Conrad's motion for sanctions (dkt. 41) is denied. This case is continued for a status hearing on March 11, 2015 at 10:15 a.m. for plaintiff to indicate whether he intends to file amended RICO claims. Time for defendant Rutherford to answer shall be held in abeyance until the status hearing.

Date: March 6, 2015

_____
U.S. District Judge Joan H. Lefkow

29