IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDMUND MICHALOWSKI, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 14 C 899 |
| v. | ) |
| | ) Judge Joan H. Lefkow |
| DAN RUTHERFORD, CURT CONRAD, KYLE HAM, and DAN RUTHERFORD CAMPAIGN COMMITTEE, | ) ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

This lawsuit, which Edmund Michalowski filed on February 10, 2014, against Dan Rutherford, Kyle Ham, Curt Conrad, and the Dan Rutherford Campaign Committee (the Campaign) is before the court on all defendants' motions to partially dismiss the second amended complaint. The court previously dismissed all counts of the first amended complaint save a claim of violating 42 U.S.C. § 1983 based on the Equal Protection Clause (sexual harassment/hostile work environment) but gave Michalowski leave to replead his claims of violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. The second amended complaint reasserts RICO claims under § 1962(c) and conspiracy to violate RICO, § 1962(d), as well as the civil rights claim (dkt. 85 (Compl.).)  All defendants have moved to dismiss the RICO counts.  (Dkt. 89, Ham and Conrad; dkt. 91, Rutherford; dkt. 92, the Campaign.)  Ham and Conrad's motion also moves to strike portions of the complaint.

For reasons stated below, Michalowski's RICO claims (counts I and II) are dismissed with prejudice and the motion to strike is denied as moot.

# BACKGROUND[1]

Dan Rutherford was elected Treasurer of the State of Illinois in November 2010, an office he held for one-term, beginning in January 2011 (Compl. ¶¶ 11–12) and ending in January 2015.[2] In lieu of running for a second term, Rutherford elected to run for Governor of Illinois, but he lost in the Republican primary election to current Governor Bruce Rauner. The actions relating to Rutherford's gubernatorial campaign form the basis of Michalowski's RICO allegations. Kyle Ham and Curt Conrad were Rutherford's ISTO chief of staff and deputy chief of staff, respectively. (*Id.* ¶¶ 6–7.) Conrad was also statewide political director for the Campaign. (*Id.* ¶ 7.) Rutherford hired Michalowski as ISTO's Deputy Director of Community Affairs in or around November 2010 and later promoted him to Director of Community Affairs and Marketing. (*Id.* ¶¶ 4, 10.) Michalowski's official job duties included the "conceptualization, design and management of statewide marketing policies and programs, and the building of partnerships with diverse groups including chambers of commerce, labor unions, and veteran, ethnic, religious and civic organizations." (*Id.* ¶ 12.) Ham and Conrad, who both reported directly to Rutherford, supervised Michalowski. (*Id.* ¶¶ 13–14.)

Throughout his employment, Rutherford, Ham, and Conrad made it clear to Michalowski that working for the Campaign was a condition of his ISTO employment.[3] (*See, e.g.*, *id.* ¶¶ 18,

---

[1] Unless otherwise indicated, the following facts are taken from the second amended complaint and are presumed true for resolving the pending motions. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). As such, the court declines defendants' offering of additional facts in footnote 7 of the individual defendants' opening brief. (*See* dkt. 90 at 18 n.7.)

[2] The court takes judicial notice of the end of Rutherford's term as Treasury and his Illinois gubernatorial bid. *See* Fed. R. Evid. 201(b), (c)(1) (noting that courts may take judicial notice of facts "generally known within the trial court's territorial jurisdiction" and that courts may do so on their own initiative); *see also United States* v. *Hemphill*, 447 F.App'x 733, 736 (7th Cir. 2011) (noting same).

[3] Like other ISTO employees, Michalowski was given Campaign business cards and, further, was told by Conrad to monitor an email account for Campaign instructions. (*Id.* ¶¶ 19–20.)

22, 53.)  Rutherford, a Republican, told Michalowski, a Democrat, that he hired Michalowski *solely* to fundraise for the Campaign and, specifically, that Michalowski's party affiliation allowed Rutherford to raise money from "fresh" sources and appear to be a centrist gubernatorial candidate.  (*Id.* ¶¶ 30–31.)  At their approximately twenty review meetings, Rutherford often became agitated and threatened to fire Michalowski because he had not raised enough money.  (*Id.* ¶¶ 34–35.)  At one point, Rutherford told Michalowski that he would be fired if he did not obtain the expected donations identified on a spreadsheet Rutherford had created.  (*Id.* ¶¶ 32–33.)

In this same vein, Rutherford told Michalowski on multiple occasions that he would fire him if the lunch and dinner meetings that Michalowski was required to organize were not successful.  (*Id.* ¶¶ 37, 41–42.)  After one such meeting, Rutherford accused Michalowski of wasting Rutherford's time because the lunch companion supported another candidate.  (*Id.* ¶¶ 38–40.)

Michalowski was not the only employee whose ISTO position was tied to campaign work.  (*Id.* ¶¶ 46, 49–50.)  One ISTO employee was ordered to organize flights for Rutherford paid for with donors' "in kind" campaign contributions.  (*Id.* ¶ 47.)  Another ISTO employee was, like Michalowski, told by Rutherford that he was specifically hired to "work" McHenry County for the Campaign.  (*Id.* ¶ 52.)  Other ISTO employees were forced by Rutherford, Ham, and Conrad to take pictures at Campaign events, which were then mailed using reduced postage rates available to the State.  (*Id.* ¶¶ 54–57.)  When ISTO employees complained about this practice, they were told to "step up" for the Campaign or be fired.  (*Id.* ¶¶ 56–57.)

There were other situations in which ISTO resources were appropriated for the Campaign, including community affairs and marketing staff being directed to compile county-level spreadsheets of elected officials for campaign purposes.  (*Id.* ¶¶ 58–59.)  When

3

Michalowski complained about this practice, he was told, as he was on several other occasions, to "keep his mouth shut" or find other work. (*Id.* ¶¶ 60–61.) Rutherford, Conrad, and Ham thought that the ISTO needed to help Rutherford win the Republican gubernatorial primary, and Ham even stated that the ISTO's resources were the Campaign's advantage over other candidates. (*Id.* ¶¶ 62–63.) On other occasions, ISTO employees were tasked with driving Rutherford, Conrad, another senior ISTO staffer, and materials to Campaign events. (*Id.* ¶¶ 64–65, 69.) Rutherford, Ham, and Conrad required Michalowski's department to organize some of these events.[4] (*Id.* ¶ 70.) When employees complained about the driving to or planning of events, they were told that their jobs depended on working for the Campaign. When Michalowski brought the employees' concerns to Conrad and Ham, they told him to turn over their names because "they are gone." (*Id.* ¶ 71.)

At required ethics training events, employees raised the issue of the use of the ISTO's resources for the Campaign to the Executive Inspector General and ISTO General Counsel. (*Id.* ¶ 66.) After the session, the Executive Inspector General and ISTO General Counsel told the employees that they should not be publicly complaining about these issues. (*Id.* ¶¶ 66–67, 103–05.) Ham also told Michalowski that he and the other employees needed to "watch themselves" because they could be fired for publicly discussing these issues. (*Id.* ¶¶ 67, 106.)

In early 2014, the Executive Inspector General and Ron Braver & Associates began to investigate allegations of Rutherford's "sexual harassment and forced political labor." (*Id.*

---

[4] Ham and Conrad also required Michalowski to organize ISTO marketing events for those they considered Rutherford's "voters" to assist the Campaign, and Rutherford threatened to fire Michalowski if he did not increase the number of these events. (Compl. ¶¶ 72–73.) Michalowski also alleges that Rutherford hired interns to work in the ISTO without conducting interviews or engaging in a formal hiring process. (*Id.* ¶ 75.) Instead, Rutherford hired candidates whose political connections would be useful to his campaign. (*Id.* ¶¶ 76–78.) When Michalowski questioned the propriety of how the program was run, Rutherford threatened to fire Michalowski if he did not keep his opinions to himself. (*Id.* ¶¶ 84, 86, 94.)

¶ 107.) During this investigation, employees implicated Rutherford, Ham, and Conrad, following which Rutherford and Ham instigated an allegedly "pretextual" investigation against the employees and fired them to punish them for providing information and to discourage them from speaking further. (*Id.* ¶ 111.)[5]

In addition to using ISTO resources for the Campaign, Rutherford also required Michalowski to spend his own funds in support of Rutherford's gubernatorial bid. In 2011, Rutherford demanded that Michalowski cover his own airfare to solicit campaign contributions at a Florida labor conference. (*Id.* ¶¶ 43–44.) Michalowski was also ordered to donate money to "non-office government functions that would benefit the Campaign," which, according to Ham, Rutherford required in lieu of monetary campaign contributions. (*Id.* ¶¶ 95–96.) Michalowski gave the demanded cash donation to Ham at the ISTO's Chicago office. (*Id.* ¶ 97.) Additionally, Michalowski was required to coordinate groups of college students to collect signatures for Mitt Romney's 2014 campaign for president.[6] (*Id.* ¶¶ 98–99.) After the students failed to collect enough signatures, Rutherford refused to pay them and told Michalowski that he would be fired if he did not cover the cost of the signature drive out of his own pocket. (*Id.* ¶¶ 100–02.) Additionally, Rutherford and Conrad required another ISTO employee to make his property available for ISTO staff performing campaign work. (*Id.* ¶ 48.)

---

[5] In their reply brief, the individual defendants ask this court to take judicial notice of an investigatory report and recommendation issued by the ISTO Executive Inspector General. (Dkt. 94 at 12 n.5.) While a court may take judicial notice of public records, the court declines to take judicial notice of the statements and conclusions in the report. At the very minimum, Federal Rule of Evidence 201 only allows courts to exercise their discretion to take "judicial notice of a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. The findings of fact in the investigatory report and recommendation are subject to reasonable dispute. *See, e.g.*, *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1082 n.6 (7th Cir. 1997) ("[C]ourts generally cannot take notice of findings of fact from other proceedings for the truth asserted therein because these findings are disputable and usually are disputed.").

[6] Rutherford was appointed Illinois campaign chair for the Romney campaign. (Compl. ¶ 98.)

5

Michalowski asserts that he was passed over for raises and promotions while at the ISTO and that those employees who did not complain about the forced work for the Campaign were rewarded with raises and benefits. (*Id.* ¶¶ 23–27.) In fact, in late 2013, Rutherford and Ham created a "hit list" of ISTO employees, including Michalowski, who would be fired because they did not adequately support the Campaign. (*Id.* ¶¶ 24–25.) Michalowski resigned from the ISTO in February 2014. (*Id.* ¶¶ 4, 140.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim on which relief may be granted. In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal, Inc.*, 635 F.3d at 886. To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories; it is the facts that count.[7] *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. ----, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (per curiam) ("Federal pleading rules call for a short and plain statement of the claim showing the pleader is entitled to relief; they do not countenance dismissal of a complaint for

---

[7] While defendants argue that the complaint is insufficient for failing to articulate precise legal theories, Rule 8 requires plaintiffs to plead facts and not legal theories.

imperfect statement of the legal theory supporting the claim asserted." (citations and internal quotation marks omitted)).

## ANALYSIS

### I. Count I – RICO § 1962(c)

Michalowski claims that the defendants violated § 1962(c) by conducting the affairs of the ISTO through a pattern of racketeering activity. The defendants offer a number of arguments as to why this claim is insufficiently pleaded. Some of the parties' arguments recognize the previous rulings of this court; others do not. The court will not revisit issues already decided in the first ruling.[8] In other words, it is resolved for purposes of this litigation that Michalowski has standing to pursue his claims and has adequately alleged facts supporting three of the four elements of a § 1962(c) claim: (1) conduct (2) of an enterprise and (3) racketeering activity. (Dkt. 82 at 7–15.) Michalowski also alleged facts showing that the racketeering predicate acts were related. (*Id.* at 16.) Where the first amended complaint fell short was its lack of allegations of fact indicating that the predicate acts posed a threat of continued criminal activity. (*Id.* at 15–18.) We pick up where we left off. The issue is whether the second amended complaint sufficiently alleges continuity.

The second amended complaint does not overcome the deficiency of the first amended

---

[8] Defendants take issue with this court's previous conclusion that coerced political labor can form the basis for extortion. They rely on the Supreme Court's interpretation of the Hobbs Act in *Sekhar* v. *United States*, 570 U.S. ----, 133 S. Ct. 2720, 186 L. Ed. 2d 794 (2013), a case decided well before this court ruled on the earlier motion but not cited by any defendant in a supporting brief. This court's Opinion is not inconsistent with *Sekhar*'s holding that extortion must entail obtaining something of value from another without his consent. (*See* dkt. 82 at 13–14.) The "property interest" claimed in *Sekhar* (demanding a recommendation) was significantly different from one's own money (campaign contributions) or one's human capital (labor) which arguably is "something of value . . . that can be exercised, transferred, or sold." *Sekhar*, 133 S. Ct. at 2726. This court also acknowledged that the law is unsettled as to whether conditioning employment on campaign contributions and unpaid labor is extortionate. (Dkt. 82 at 14–15.) In any event, the result in this case makes it unnecessary to revisit the question.

complaint with respect to continuity because it does not identify an implicit threat of future harm. Michalowski relies on "closed-ended continuity." The parties disagree as to what is required to show closed-ended continuity. Although this court set forth the standard in its previous ruling (*see id.* 82 at 16–17), further discussion is warranted in light of Michalowski's argument that a threat of continued criminal activity is not required when alleging closed-ended continuity.

Closed-ended continuity is demonstrated by showing a "series of conduct that existed for such an extended period of time that a threat of future harm is implicit." *Roger Whitmore's Auto. Servs., Inc.* v. *Lake Cnty.*, 424 F.3d at 673 (citing *Midwest Grinding Co., Inc.* v. *Spitz*, 976 F.2d 1016, 1023 (7th Cir. 1992)). The threat of future harm is not only the underlying rationale of the standard, but it is one of the two central questions. *See Midwest Grinding*, 976 F.2d at 1023 ("Having concluded this was a closed scheme does not end the matter, however, since a scheme that has ceased to exist still exhibits continuity if the predicates extended over a substantial period of time and *threaten to recur in the future*." (citations and internal quotation marks omitted) (emphasis added). The "*Morgan* factors" are to be considered in analyzing this requirement. *See Morgan* v. *Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986) ("Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries."); *see also Midwest Grinding*, 976 F.2d at 1023–24 (noting same and stating that the *Morgan* factors are consistent with and survived *H.J. Inc.*). Courts, however, do not blindly apply the *Morgan* factors; rather they are merely an aid in answering the two central questions of closed-ended continuity. *See Midwest Grinding*, 976 F.2d at 1023 ("In making that determination, we are *aided* by the multifactor test outlined in *Morgan* . . . .")

(citations and internal quotation marks omitted) (emphasis added)). The Seventh Circuit has warned that the *Morgan* factors are not to get in the way of the bigger picture:

> Despite this inherent lack of a threat of future/habitual criminal activity, the district court concluded that the amended complaint sufficiently alleged continuity because the detectives' one-shot scheme took several years, involved a variety of criminal acts, and targeted multiple victims. While such factors are generally helpful, *see Morgan*, 804 F.2d at 975, we have cautioned that courts are to apply these factors with an eye toward achieving a natural and commonsense result, recognizing that Congress was concerned in RICO with long-term criminal conduct. The district court erred in allowing the factors to over-ride the big picture.

*Gamboa* v. *Valez*, 457 F.3d 703, 709 (7th Cir. 2006) (citations and internal quotation marks omitted). In *Gamboa*, the Seventh Circuit took an interlocutory appeal of a district court's denial of a motion to dismiss the plaintiff's § 1962(c) claim. *Id.* at 704. The question presented was "whether a single scheme that ends without indication that it will be repeated establishes a pattern of racketeering activity merely because the scheme occurs over several years, involves a variety of predicate acts, and targets more than one victim." *Id.* at 705. The court found that under those circumstances there was no continuity and stated, that for the continuity

> element to be satisfied, the alleged acts of wrongdoing must not only be related, but, important for purposes of this appeal, must amount to or pose a threat of continued criminal conduct. This is true whether the misconduct at issue is considered a closed-ended scheme (a completed scheme that, by its duration, can carry an implicit threat of future harm) or open-ended scheme (a scheme that, by its intrinsic (e.g., business-as-usual) nature, threatens repetition and thus future harm).

*Id.* at 705–06 (citations and internal quotation marks omitted). Therefore, for a plaintiff to state a § 1962(c) claim, there must be a threat of continued criminal conduct. *See id.*

While Michalowski alleges a number of predicate acts from November 2010 through June 2014, none of these predicate acts suggests a continued threat. The entire premise of

9

Michalowski's complaint is that Rutherford, Ham, Conrad, and the Campaign used the ISTO to coerce contributions and free labor so that he could become Illinois's next governor.[9] Rutherford not only lost his gubernatorial bid, but he is no longer Treasurer. As the Seventh Circuit noted in *Roger Whitmore's*, 424 F.3d at 674, in these situations in which an alleged scheme has a "natural ending point," plaintiffs effectively plead themselves "out of showing a continuing threat of continued [criminal] activity."[10]

Perhaps recognizing the apparent lack of future harm (as well as its importance under the law), Michalowski argues that because the Campaign still exists as a legal entity there is "an implicit threat of future racketeering activity because Defendant Rutherford still seeks public office and the Campaign is still in existence." (Dkt. 93 at 23). While this court takes judicial notice from Illinois's public records that the Campaign still exists as a legal entity,[11] the complaint's allegations do not support Michalowski's inferential leap of an implicit threat of continuing criminal conduct. Michalowski disregards that defendants accomplished the

---

[9] In its previous ruling, this court found that the Campaign could be vicariously liable for the actions of Rutherford, Ham, and Conrad. (Dkt. 82 at 10–11.)

[10] While *Roger Whitmore's* was referring to an open-ended conspiracy in the summary judgment context, *Gamboa* extended this reasoning to closed-ended continuity in the motion to dismiss context. *See Gamboa*, 457 F.3d at 708 ("Even with the addition of the other alleged victims, the amended complaint cabins the detectives' alleged wrongdoing here to a one-time endeavor to wreak havoc upon all matters linked to a singled murder investigation. Consequently, the criminal activity, as alleged, had a built-in end point: once the frame-up was put to rest, the scheme was over. *Cf. Roger Whitmore's*, 424 F.3d at 674 ('[Plaintiff] pleaded himself out of showing a continuing threat of continued activity, because the alleged scheme had a natural ending point . . . .') (discussing open-ended continuity in summary judgment context) . . . ." (alteration and first omission in original)).

[11] The parties do not dispute that this court can take judicial notice of public documents that the Campaign still exists as a legal entity. This court, however, declines to take judicial notice of what amounts to arguments based on conclusions that Michalowski draws from the fact that the URL for the Campaign still exists. This court has concerns about the reliability of the information on the website. Even if the court took judicial notice of the website, nothing there makes Michalowski's claim viable. For a discussion of some of the problems presented by taking judicial notice of websites, see Judge St. Eve's discussion in *Hill* v. *Capital One Bank (USA), N.A.*, No. 14-cv-6236, 2015 WL 468878, at *5–6 (N.D. Ill. Feb. 3, 2015).

predicate acts in this case because Rutherford was able to use his position as Treasurer to direct ISTO employees to work on his gubernatorial campaign. Therefore, it was Rutherford's status as a *public official* and not merely his status as a *candidate* that allowed for the predicate acts. This is similar to *Kaye* v. *D'Amato*, in which the defendants were alleged to have violated § 1962(c) by using their official positions to secure property and influence. No. 05-CV-982, 2008 WL 5263746, at *10 (E.D. Wis. Dec. 18, 2008). In finding that the plaintiff had not pleaded continuity, the court considered it particularly important that the defendants no longer occupied those positions. *Id.* ("Most importantly, the entire scheme relied on [certain defendants'] utilizing their official positions within the city government. Now that all three individuals no longer hold those positions, no inferentially implicit threat of continuation of the alleged pattern can be said to remain.").

Michalowski also does not distinguish his RICO claims from those dismissed in similar cases. In *Roger Whitmore's*, in which the defendants allegedly solicited campaign contributions in return for what amounted to county-level towing contracts, the Seventh Circuit affirmed summary judgment on the plaintiffs' § 1962(c) claim because of a lack of continuity. It stated, "There is no indication that the defendants engaged in any other racketeering scheme before or after the closed period associated with [one of the defendant's] campaign, or that there was a concurrent and unrelated scheme to use the campaign contributions for other purposes." 424 F.3d at 674. Michalowski argues that *Roger Whitmore's* is factually dissimilar from this case because the alleged conduct here was a year-and-a-half longer, many of *Roger Whitmore's* predicate acts were wire or mail fraud, and that there is a larger class of victims here.

Michalowski is correct that there are dissimilarities between *Roger Whitmore's* and this case, but these dissimilarities do not justify finding that Michalowski has alleged facts to

11

establish continuity. The distinctions that Michalowski points out track the *Morgan* factors analysis and, therefore, the court will discuss Michalowski's arguments, to the extent necessary, within its discussion of those factors.

The time frame, while longer than that in *Roger Whitmore's*, is not independently suggestive of continuity. The time frame here is coextensive with the Campaign. This too appears to have been the case in *Roger Whitmore's*. *See id.* Michalowski attempts to enlarge the time frame beyond the Campaign by alleging instances of witness intimidation during the months that followed the gubernatorial primary. These allegations relate to concealment of the scheme,[12] which, even if predicate acts as assumed here, "do nothing to extend the *duration* of the underlying . . . scheme." *Midwest Grinding*, 976 F.2d at 1024 (citing and construing *Pyramid Secs. Ltd.* v. *IB Resolution, Inc.*, 924 F.2d 1114, 1117 (D.C. Cir. 1991), as holding that a "scheme to conceal underlying criminal activity by giving false deposition testimony does not extend the length of a closed-ended RICO scheme").[13] Further, the Seventh Circuit has found continuity lacking in single-scheme RICO cases with longer time frames than that alleged here. *See, e.g.*, *Gamboa*, 457 F.3d at 707–08 (finding no continuity despite predicate acts spanning five-and-a-half years in single-scheme § 1962(c) case).

While it is true that a single scheme can make a RICO pattern, "it is not irrelevant, in analyzing the continuity requirement, that there is only one scheme." *Roger Whitmore's*, 424 F.3d at 673–74 (quoting *Sutherland* v. *O'Malley*, 882 F.2d 1196, 1204 (7th Cir. 1989)); *see*

---

[12] Michalowski's own motion argues that this was the purpose of the alleged predicate act: "Defendants were attempting to dissuade the witnesses from, among other things, providing testimony in this proceeding and ultimately before this Court regarding the allegations in this case." (Dkt. 93 at 14.)

[13] Since the *Morgan* factors are merely an aid in determining whether predicate acts occur over a substantial period and whether there is a threat of future harm, it is also worth noting that in *Midwest Grinding* the court stated that "acts to conceal underlying wrongdoing in a RICO suit do not carry with them the threat of future harm." 976 F.2d at 1024 (construing *Aldridge* v. *Lily-Tulip, Inc.*, 953 F.2d 587, 593–604 (11th Cir. 1992)).

12

*also Gamboa*, 457 F.3d at 706 (noting that the plaintiff "has not satisfied the continuity element because the allegations in his amended complaint . . . present only a single, nonrecurring scheme"). Here, the fact of a single nonrecurring scheme is of particular relevance because it forecloses the possibility of racketeering schemes outside of the Campaign, particularly after Rutherford left the ISTO. *See Roger Whitmore's*, 424 F.3d at 674. Without such allegations, any implicit threat of future harm is speculative.

The number of predicate acts and victims is hard to gauge, as many of the alleged acts are general and provide little insight into the frequency or timing of the alleged actions.[14] (*See, e.g.*, Compl. ¶¶ 64–71 (providing general allegations regarding state drivers and state tours).) Further, some of the most specific predicate acts seem as though they could have taken as little as a few minutes to accomplish. (*See, e.g.*, *id.* ¶ 47 (booking airline flights).) Likewise, the complaint is not specific as to the number of ISTO employees that could have been victims of the predicate acts. The largest number that Michalowski alleges with any specificity is fifteen to twenty employees, but in fact Michalowski is discussing the size of his department and not those necessarily involved in coerced activity. Even if the court assumes that each of these employees was involved in coerced campaign labor, the likelihood of future harm does not increase where the defendants are no longer in control of them.

The lack of variety of the predicate acts and distinctiveness of the injuries cut against continuity. Almost universally, the predicate acts consist of very similar extortionate activity, in

---

[14] Defendants argue that many of the complaint's allegations are insufficient because the complaint often uses the passive voice to allege that a threat has been made without indicating any speaker or makes general allegations regarding all of the defendants. (*See* dkt. 90 at 17.) The point is a good one to the extent that defendants argue that in multi-defendant RICO cases, the complaint must allege facts sufficient to show that each defendant violated the statute. This is a requirement of Rule 8 and not one only imposed when Rule 9(b)'s heightened pleading requirements are applicable. *See Bank of Am., N.A.* v. *Knight*, 725 F.3d 815, 818 (7th Cir. 2013). The complaint, however, does not allege a pattern of racketeering, even when giving benefit to Michalowski's sometimes generic treatment of defendants.

which defendants threatened employees' jobs if they did not contribute to the Campaign. The only outlier is the allegation regarding witness tampering, which itself is merely a cover-up of the other alleged predicate acts. Likewise, the injuries suffered—coerced labor and contributions—were also universally the same among the victims and were therefore not all that distinct in that "the injuries stemmed from a single scheme . . . involving similar predicate acts." *Meyer Material Co.* v. *Mooshol*, 188 F. Supp. 2d 936, 943 (N.D. Ill. 2002).

Applying the *Morgan* factors reinforces this court's common sense conclusion that Michalowski has not established continuity, as the complaint does not contain facts that allow this court to infer that there is a threat of future harm. Because Michalowski has failed to allege a pattern of racketeering activity, his § 1962(c) claim must be dismissed.

## II. Count II – RICO § 1962(d)

Count II alleges that defendants engaged in a § 1962(d) RICO conspiracy to violate § 1962(c). As noted in its previous ruling, if a plaintiff fails to allege a claim under § 1962(c), the plaintiff's § 1962(d) claim based on the same nucleus of operative facts fails as well. *See Stachon* v. *United Consumers Club, Inc.*, 229 F.3d 673, 677 (7th Cir. 2000). Since, as articulated above, Michalowski's § 1962(c) claim fails, so too does his § 1962(d) claim. Accordingly, his § 1962(d) claim must be dismissed.

### CONCLUSION AND ORDER

For the foregoing reasons, the motions to dismiss filed by Ham and Conrad (dkt. 89), Rutherford (dkt. 91), and the Campaign (dkt. 92) are granted. Michalowski's RICO claims (counts I and II) are dismissed with prejudice. Michalowski is given until March 8, 2016 to file a

14

Third Amended Complaint alleging only the facts that are relevant to his § 1983 claim.[15]  This case will be called on March 1, 2016, at 11:00 a.m. for a status hearing and scheduling conference with a view of bringing this case to conclusion as expeditiously as is practicable.

Date: February 18, 2016

_____
U.S. District Judge Joan H. Lefkow

---

[15] Michalowski's argument with respect to dismissed claims are understood to be preserved for appeal.